890 P.2d 702

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Solomon SILVA, Defendant–Appellant.**

**No. 16411.**

Intermediate Court of Appeals of Hawai'i.

March 13, 1995.

Walter J. Rodby, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Sheryl L. Cockett, Deputy Pros. Atty., on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant Solomon Silva (Defendant) was charged with committing assault in the third degree in violation of Hawai'i Revised Statutes (HRS) § 707–712(a) (1985) on Cheryl Moriyama (Moriyama) and Douglas Dilliner (Dilliner) on January 29, 1991. Following a jury-waived trial on June 26, 1992, he was convicted of the charge involving Moriyama and sentenced to one year's probation with a $400 fine. Defendant was acquitted of the other charge. During the trial, the trial court asked 110 questions of the State's witness, Dilliner, and dissuaded Defendant from testifying in his own defense. Moriyama did not appear or testify. We hold that Defendant's constitutional and statutory rights were violated, set aside the July 31, 1992 judgment of conviction, and remand the case for a new trial before a different judge.

## I.

■ A state criminal defendant is entitled to an impartial judge as part of the fair trial guarantee in the due process clause of the fourteenth amendment of the United States Constitution. "The [s]tate[,] of course[,] must provide a trial before an impartial judge ... [because] [w]ithout [this] basic protection[ ], a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may [then] be regarded as fundamentally fair." *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (citations omitted). It is well set-

tled that, "A fair trial in a fair tribunal is a basic requirement of due process. Fairness[,] of course[,] requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Thus, " 'every procedure which would offer a possible temptation to the ... judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' " *Id.* (quoting *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). *Accord State v. Brown,* 70 Haw. 459, 467, 776 P.2d 1182, 1187–88 (1989) (due process requires that a defendant charged by a judge with an indirect constructive criminal contempt for failing to appear before the court be tried for that charge before a different judge).

■ The Hawai'i Supreme Court has long acknowledged that an impartial judge is required to insure a fair trial. *Peters v. Jamieson,* 48 Haw. 247, 255, 397 P.2d 575, 582 (1964); *In re Trask,* 46 Haw. 404, 420, 380 P.2d 751, 760 (1963) (per curiam); *Glover v. Fong,* 39 Haw. 308, 316 (1952). *See also Territory v. Van Culin,* 36 Haw. 153, 161 (1942) (trial judge " 'should not intimate any opinion upon the facts, assume the prisoner's guilt, or use any expression calculated to prejudice the rights of either party' " (quoting *Territory v. Kekipi,* 24 Haw. 500, 504 (1918))). Since the due process clause in section 5, article I of the Hawai'i Constitution is identical to the due process clause in the fourteenth amendment of the United States Constitution,[1] we hold that the right to an impartial judge also inheres in section 5 of article I of the Hawai'i Constitution. *See State v. Hutch,* 75 Haw. 307, 321–22, 861 P.2d 11, 19 (1993) (because the right to appear *pro se* under the sixth amendment of the United States Constitution is applicable to the states under the fourteenth amendment, the right is also guaranteed to defendants under the similar provision in article I, section 14 of the Hawai'i Constitution). Our state constitutional safeguards "must at least comport with

---

1. The Hawai'i Constitution provides, "No person shall be deprived of life, liberty or property without due process of law...." Haw. Const. art. I, § 5.

United States Supreme Court standards." *State v. Grahovac*, 52 Haw. 527, 533, 480 P.2d 148, 152 (1971). *Accord State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967) ("we [must] afford defendants the minimum protection required by federal interpretations of the [f]ourteenth [a]mendment to the [f]ederal [c]onstitution"). *See also State v. Santiago*, 53 Haw. 254, 265, 492 P.2d 657, 664 (1971).

Here, the court asked 110 questions of a prosecution witness. Undeniably, "a trial judge has the right to examine witnesses to elicit pertinent material facts not brought out by either party or to clarify testimony" as incident to his or her truth-seeking power. *Hutch*, 75 Haw. at 327, 861 P.2d at 21. This proposition is buttressed by Hawai'i Rules of Evidence Rule 614(b) (1985) which states that, "The court may interrogate witnesses, whether called by itself or by a party." Understandably, there may be times in a trial when seemingly relevant points are not explored by counsel and counsel's failure to do so will be frustrating to the trial court. But, there are limits to the extent to which a trial court may insert itself into the proceedings.

Accordingly, " '[t]he power or discretion of a trial judge to question a witness is not unlimited or unbounded[.]' " *State v. Schutter*, 60 Haw. 221, 222, 588 P.2d 428, 429 (1978) (per curiam) (quoting 81 Am.Jur.2d *Witnesses* § 419, at 426 (1976) (Am.Jur.)). For, " '[w]hile the mere fact that the judge examines a witness at some length is not necessarily improper, it is improper for a judge to conduct an unduly extended examination of any witness.' " *Id.* (quoting 81 Am.Jur. § 419, at 426–27). When the court questions witnesses in a jury trial, " 'the judge should not by ... his [or her [2]] questioning indicate ... [an] opinion as to the

merits of the case,' " to avoid creating jury bias for one side or the other. *Id.* at 222–23, 588 P.2d at 429 (quoting 81 Am.Jur. § 419, at 427). In a jury-waived trial, the particular danger of jury bias is absent and so "the judge is accorded considerably greater discretion in the questioning of witnesses in jury-waived trials[.]" *Hutch*, 75 Haw. at 326 n. 8, 861 P.2d at 21 n. 8.

Nevertheless, " '[t]he judge should not assume the role of an advocate for either party[.]' " *Schutter*, 60 Haw. at 223, 588 P.2d at 429 (quoting 81 Am.Jur. § 419, at 427) (court's examination of witness in jury-waived trial excessive). This caution is all the more important in a jury-waived trial where the court acts both as the judge of the law and as the judge of the facts.[3] When the trial judge fails to act impartially and takes on the role of the prosecutor, the resulting conviction will be reversed. *Van Culin*, 36 Haw. at 162–63 (defendant deprived of fair trial when judge takes on the role of prosecutor). A judge takes on the role of the prosecutor when he or she conducts a "rigorous, persistent and extensive interrogation" of a witness, eliciting testimony which "tends to discredit the theory of the defense ... with questions normally identified with a prosecutor[.]" *Id.* at 160.

In the present case, most of the court's questions followed the prosecutor's re-direct examination of Dilliner. The court's examination was thorough and methodical, not aimed at clarifying certain points but of confirming the necessary elements of the crime and the surrounding circumstances. It was extensive questioning of the kind that would be pursued by a prosecutor of his or her own witness. Without reproducing all of the

---

**2.** Hereafter, whenever the pronoun "he" or any variation thereof appears in a quote, the corresponding feminine pronoun also applies as appropriate.

**3.** Canon 3 of the Code of Judicial Conduct in effect at the time of the trial on June 26, 1992, stated that, "A Judge Should Perform the Duties of His Office Impartially and Diligently[.]" A revised version of the code became effective on September 9, 1992. The preamble of the revised code explains that, "[W]hen 'should' or 'should not' is used, the text is intended as hortatory and

as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined." Canon 3 now uses the word "shall" in place of "should" and states: "A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY[.]" Revised Code of Judicial Conduct, Canon 3. According to the preamble, "When the text uses 'shall' or 'shall not,' it is intended to impose binding obligations[,] the violation of which can result in disciplinary action."

court's questions, the following is especially pertinent to the charge involving Moriyama:

THE COURT: Okay. Was Cheryl Moriyama with you?

A Yes.

THE COURT: She slept over there with you overnight?

A Yes.

(TR: 40.)[4]

THE COURT: And you wanted to make a police report?

A I didn't want to make a police report.

THE COURT: Why not?

A She wanted to.

THE COURT: Why didn't you want to?

A Because I was scared. I didn't want any part of it.

THE COURT: You were scared?

A Yes.

THE COURT: Scared of what?

A Scared of him.

THE COURT: In the police department?

A Oh, not in the police department. On the way in I was thinking about it.

THE COURT: All right. But you gave a statement?

A Yeah.

THE COURT: Were you requested to give a statement?

A Cheryl asked me to.

THE COURT: And did you object to giving a statement?

A Yes, I did.

THE COURT: Why did you give it then?

A Because she asked me to.

(TR: 41–42.)

THE COURT: Okay. You said you made a left turn. So from ... onto Mokapu Boulevard, right?

A Uh huh.

THE COURT: And you made it from the left lane to the far left lane? To the far right lane, right?

A Yes.

THE COURT: And then this car came abreast of you, is that correct?

A Yes.

THE COURT: And he [ (Defendant) ] motioned for you to pull over, is that correct?

A Yes.

THE COURT: Did you pull over on the sidewalk area?

A There's no sidewalk.

THE COURT: What is there? Dirt shoulder?

A Yes.

THE COURT: Okay. And he drove his vehicle so he would be perpendicular to yours?

A Yes.

THE COURT: You didn't turn off the ignition?

A No.

THE COURT: Why not?

A I didn't know what was going on and if I ...

THE COURT: So if an altercation would come about you could get away, is that your ...

A Yes.

THE COURT: Okay. And he came out to your driver's side and you were the driver?

A Yes.

(TR: 43–44.)

THE COURT: All right. Now, you said that he struck Miss Moriyama, is that correct?

A Yes.

THE COURT: While she was standing outside the vehicle? Is that correct?

A Yes.

THE COURT: Was she looking towards the defendant or was she looking away from the defendant?

---

**4.** The reference is to the transcript of the proceedings held on June 26, 1992, and the relevant pages of the transcript.

A Looking towards him.

THE COURT: And he approached her?

A Yes, he did.

THE COURT: How did he approach her?

A He walked up to her.

THE COURT: Was it a casual walk? A saunter? What was it?

A It was a [sic] abrupt walk.

THE COURT: Okay. Then what happened?

A He proceeded to hit her.

THE COURT: What do you mean by that?

A He hit her on the left side of her face.

THE COURT: With what hand? The right or left?

A Right hand.

THE COURT: Was the fist open or closed.

A It was open.

THE COURT: Okay. And he slapped her on her left face?

A Yes.

THE COURT: When he slapped her face did you observe what happened to her face, if anything?

A I did not.

THE COURT: Her face didn't move at all?

A It did. Her head.

THE COURT: And then did he slap her a second time?

A Yes.

THE COURT: Where was that?

A On the right side.

THE COURT: Was the fist open again?

A Yeah.

THE COURT: And what happened to her face? Same thing?

A Yeah.

THE COURT: Was there a third strike?

A Yeah.

THE COURT: Where was that?

A That was on the left side.

THE COURT: Left side of the face again?

A Yes.

THE COURT: Again a slap?

A Yeah.

THE COURT: And then what happened?

A And then I was trying to wave down a car. Next thing I turned and I saw he hit her and she fell to the ground.

THE COURT: How did he hit her?

A Uh ...

THE COURT: This would be the fourth time now?

(TR: 46–48.)

THE COURT: Okay. He was yelling but you do not know what was said, is that correct?

A Yeah.

THE COURT: Did she respond in any way?

A Yes.

THE COURT: What, if anything, did she say?

A She said, "Why are you doing this?"

(TR: 49–50.)

Defense counsel did not object to the questioning.

This case involved a simple misdemeanor assault charge. Yet, the trial court conducted a detailed and unduly extensive examination of one of the complainants, the fair import of which was to confirm one of the charges against Defendant. Such intrusion foreseeably and justifiably invites appeal in the event of a conviction. The nature and extent of the court's questioning demonstrates that the court assumed the role of a prosecutor, thus failing to act impartially. " 'Being impartial means being indifferent as between the parties.' " *Van Culin*, 36 Haw. at 161 (quoting *Sunderland v. United States*, 19 F.2d 202, 216 (1927)). It follows, therefore, " 'that, while the judge may and should direct and control the proceedings ... he may not extend his activities so far as to become in effect ... an assisting prosecutor....' " *Id.* The court's conduct removed the safeguard of impartiality which is embod-

ied in the guarantee of a fair trial and which the record should reflect.

We hold, then, that Defendant's right to an impartial judge guaranteed under the due process clause of the Hawai'i Constitution was violated and was plain error. Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) provides that errors not affecting substantial rights will be disregarded as harmless. Under Rule 52(a), "[a]n error that [does] not prejudice the defendant is deemed 'harmless error' and disregarded ... [and an error which] may have been prejudicial ... is 're-versible error'" and may result in the reversal of a conviction or in a new trial. 3A C. Wright, *Federal Practice and Procedure: Criminal* § 851, at 294 (2d ed. 1982).

Since the questioning here seriously compromised the fundamental tenet of judicial impartiality which must underlie criminal trials, we do not believe it constituted harmless error. The United States Supreme Court has stated that certain constitutional rights under the United States Constitution are "so basic to a fair trial that their infraction can never be treated as harmless error[.]" *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). Also, in this jurisdiction it has been held that although there may be "ample evidence to establish [a] defendant's guilt, the deprivation of a fair trial ... [because of a partial judge] constitute[s] reversible error." *Van Culin*, 36 Haw. at 162–63.

■ We hold, then, that when the court assumes the role of a prosecutor, it violates the fundamental due process requirement that the tribunal be impartial, and such an error, by definition, is inherently prejudicial and not harmless. Our holding is consistent with the United States Supreme Court's recognition that, "[d]espite ... the harmless-error doctrine, ... some constitutional errors require reversal without regard to the evidence in the particular case[,]" and the partiality of a judge is one such type of error. *Rose*, 478 U.S. at 577, 106 S.Ct. at 3105. Likewise, we further hold that under the

parallel due process provision of the Hawai'i Constitution, the violation of the Hawai'i constitutional right to an impartial judge is so basic to a fair trial that it can never be treated as harmless error. Clearly, as the United States Supreme Court may declare a constitutional right so basic to a fair trial that its contravention can never be deemed harmless under the federal constitution, so may the Hawai'i appellate courts make such a declaration under the Hawai'i Constitution where appropriate, and they may do so even in those instances where similar protection may not be afforded by the United States Supreme Court under the same language in the federal constitution. *See State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58–59 (1974) (the court may "extend the protections of the Hawaii [Hawai'i] Bill of Rights beyond those textually parallel provisions in the Federal Bill of Rights when logic and a sound regard for the purposes of those protections have so warranted"); *Texeira*, 50 Haw. at 142, 433 P.2d at 597 ("federal decisions do not ... prevent this court from extending greater protection in interpreting the state constitution").

## II.

Next, we consider the court's comments on Defendant's desire to testify in his own defense.

When the prosecutor was two sentences into her final argument, defense counsel requested a conference with the judge. Following a chambers conference with counsel, the court reconvened and, in a colloquy with Defendant, dissuaded him from testifying in his own defense:[5]

> THE COURT: ....
>
> I believe [Defense Counsel] rested. Now, Mr. Solomon [sic], [Defense Counsel] has seen me in chambers and said that you wanted to testify. Is that correct?
>
> MR. SILVA: Yes, I do, sir.

5. The timing of Defendant's request was not an issue raised below or challenged on appeal. In any event, the right involved is essential to due process, and any disruption which may have been caused by allowing Defendant to testify at that point in the jury-waived trial would have been minimal.

THE COURT: All right. Let me tell you this: Maybe we should listen to our lawyers, you know what I mean?

The motion that I heard, all the Government has to show me is some evidence of assault and I have to deny the motion.

Now, the Government, on the case on the merits, has the burden of proving each and every element beyond a reasonable doubt which is a much heavier burden. Do you understand that? And I've worked with [Defense Counsel] quite a long time and she's one of the very, very competent Defense Attorney [sic].

Are you telling me you want to go counter to her advice to you?

MR. SILVA: I decided I'll go with her advice, Your Honor.

THE COURT: All right. Argument? State first.

(TR: 73–74.)

Following arguments, the court found Defendant guilty of assaulting Moriyama.

The issue, as we view it, is whether the court acted properly in dissuading Defendant from testifying.

### A.

■ Defendant's right to testify in his own defense is guaranteed by the constitutions of the United States and Hawai'i and by a Hawai'i statute.

The right to testify in one's own behalf arises independently from three separate amendments to the United States Constitution. It is one of the rights guaranteed by the due process clause of the fourteenth amendment as " 'essential to due process of law in a fair adversary process.' " *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987) (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975)). The fourteenth amendment requires that the criminal defendant have " '*an opportunity to be heard in his defense*—a right to his day in court—[which is] basic in our system of jurisprudence[.]' " *Id.* (quoting *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948)) (emphasis in original). The Hawai'i Supreme Court has also held that "every criminal defendant has a right to testify in his own defense[,] [the] right is 'basic in our system of jurisprudence[,]' and [it is] implicitly guaranteed by the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment." *State v. Santiago,* 53 Haw. 254, 259, 492 P.2d 657, 660 (1971) (quoting *In re Oliver,* 333 U.S. at 257–73, 68 S.Ct. at 499–508).

The right to testify is also guaranteed to state defendants by the compulsory process clause of the sixth amendment as applied through the fourteenth amendment. *Rock,* 483 U.S. at 52, 107 S.Ct. at 2709. The compulsory process clause "grants a defendant the right to call 'witnesses in his favor[.]' " *Id.* (quoting *Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967)). Logically, the accused's right to call witnesses includes "a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Id.* A defendant has the "right to present his own version of events in his own words." *Id.* Otherwise, the right "to call[ ] witnesses is incomplete if [the defendant] may not present himself [or herself] as a witness." *Id.*

Lastly, "[t]he opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony[,] . . . [since] '[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so.' " *Id.* 483 U.S. at 52–53, 107 S.Ct. at 2709–10 (quoting *Harris v. New York,* 401 U.S. 222, 230, 91 S.Ct. 643, 648, 28 L.Ed.2d 1 (1971)).

Because the texts of sections 5, 14, and 10 of article I of the Hawai'i Constitution parallel the fourteenth, fifth, and sixth amendments of the United States Constitution,[6] we

---

6. The fourteenth amendment of the United States Constitution provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law[,]" while article I, section 5 of the Hawai'i Constitution provides that, "No person shall be deprived of life, liberty or property without due process of law[.]" The sixth amendment of the United States Constitution provides the defendant the right "to have compulsory process for obtaining Witnesses in

hold that the right to testify is also guaranteed by these parallel provisions of the Hawai'i Constitution. *See State v. Hutch,* 75 Haw. 307, 321–22, 861 P.2d 11, 19 (1993). We must afford defendants at least the same protection under the Hawai'i Constitution as is afforded them by the United States Constitution.[7]

Although not cited by the parties, there is statutory protection for the right to testify. HRS § 801–2 (1985) states:

> In the trial of any person on the charge of any offense, *he shall have a right* to meet the witnesses, who are produced against him, face to face; to produce witnesses and proofs in his own favor; and by himself or his counsel, to examine the witness produced by himself, and cross-examine those produced against him; and *to be heard in his defense.*

(Emphases added.) In applying a statute that similarly sanctioned the defendant's right to testify,[8] the Supreme Court of Hawai'i held the denial of the right was reversible error because "[t]he privilege of a defendant in a criminal proceeding to give evidence in his own behalf may not be denied without good cause." *State v. Valmoja,* 56 Haw. 452, 454, 540 P.2d 63, 65 (1975) (per curiam) (citing HRS § 621–15 (1968) (repealed 1980)).

Having established that Defendant's right to testify was constitutionally and statutorily protected, we decide whether Defendant's right was violated.

"[T]he [s]ixth [a]mendment 'grants to the accused *personally* the right to make his defense.'" *Rock,* 483 U.S. at 52, 107 S.Ct. at 2709 (quoting *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562

(1975)) (emphasis in original). Accordingly, the right to testify "may be relinquished only by the defendant[.]" *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993). That decision must be voluntary and not the product of coercion or undue influence. *United States v. Goodwin,* 770 F.2d 631, 637 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). We believe that under the circumstances here, Defendant cannot be deemed to have voluntarily waived his right to testify.

The judge occupied a position of authority in the courtroom. Moreover, as was surely evident to all the participants and to Defendant, the judge was also the ultimate arbiter of Defendant's fate in this jury-waived trial. As a result, the judge's reproach to Defendant to follow his attorney's advice and thus refrain from testifying could not have been lightly regarded by Defendant. The predictable consequence of the court's statements was the imposition of its own will on Defendant and the chilling of Defendant's desire to testify as part of his defense. Defendant was precluded from exercising his right to testify just as surely as if it were denied to him altogether. We hold, then, that Defendant's constitutional and statutory right to testify in his own defense was violated and that that violation was plain error. HRPP Rule 52(b). *See also State v. Fox,* 70 Haw. 46, 55, 760 P.2d 670, 675 (1988).

■ Once a defendant decides to testify, the court may not inquire into the defendant's reasons for that decision, except in the rare situation where the circumstances would clearly justify an inquiry. Comments by the

---

his favor," while article I, section 14 of the Hawai'i Constitution provides the defendant the right "to have compulsory process for obtaining witnesses in the accused's favor[.]" The fifth amendment to the United States Constitution provides that, "No person ... shall be compelled in any Criminal Case to be a witness against himself," while article I, section 10 of the Hawai'i Constitution provides, "nor shall any person be compelled in any criminal case to be a witness against oneself."

**7.** See discussion in section I, *supra* at pages 704–705.

**8.** Hawai'i Revised Statutes § 621–15 (1968) (repealed 1980) provided:

> The defendant in any criminal proceeding may give evidence on his own behalf, and thereupon be subject to cross-examination in like manner as any other witness, but in case any such person neglects or declines to offer himself as a witness no inference shall be drawn prejudicial to the accused by reason of such neglect or refusal, nor shall any argument be permitted tending to injure the defense of the accused person on account of such failure to offer himself as a witness.

court which are intended to discourage a defendant from testifying constitute a significant breach of a defendant's right to present a defense, as we have indicated, as well as a defendant's right to counsel, discussed *infra*, and the court's obligation to remain impartial, *State v. Alfonso*, 65 Haw. 95, 98, 648 P.2d 696, 699 (1982). Accordingly, we further hold that after a defendant notifies the court of his or her intent to testify, the court should not comment upon the advisability of such a decision. The decision to testify is ultimately committed to a defendant's own discretion, preferably in consultation with defense counsel, but neither the existence nor the nature of such consultation should ordinarily be the subject of any judicial scrutiny. The "basic decision[ ]" of whether to "testify in one's own behalf [is] ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) (citing ABA Project on Standards for Criminal Justice, The Prosecution Function and Defense Function § 5.2, at 237–38 (App. Draft 1971)).

### B.

■ A violation of Defendant's right to counsel under the sixth amendment of the United States Constitution and article I, section 14 of the Hawai'i Constitution is also implicated where the judge intrudes into the attorney-client relationship.

It is well established that "[t]he right of one charged with [a] crime to counsel [is] . . . deemed fundamental and essential to fair trials . . . in [our country]." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). *See also Briones v. State*, 74 Haw. 442, 460, 848 P.2d 966, 979 (1993); *State v. Aplaca*, 74 Haw. 54, 66, 837 P.2d 1298, 1305 (1992); *State v. Dicks*, 57 Haw. 46, 47, 549 P.2d 727, 729 (1976). Counsel is recognized as essential because experience has shown that " '[a defendant] requires the guiding hand of counsel at every step in the proceedings against him.' " *Gideon*, 372 U.S. at 345, 83 S.Ct. at 797 (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).

■ One of defense counsel's responsibilities is to advise the defendant on the question of whether or not he or she should testify. *United States v. Martinez*, 883 F.2d 750, 757 (9th Cir.1989), *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.1992). "It is primarily the responsibility of the defendant's counsel, not the trial judge, to advise the defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so." *United States v. Goodwin*, 770 F.2d 631, 637 (7th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). In the atypical case where the court may be obligated to examine a defendant's exercise of the right, its "role . . . is limited to making sure that the defendant understands his or her rights and ensuring that the defendant's final decision is made voluntarily, with no coercion or undue influence." *Id.* Other than this, under our trial system, the court can have no discernible interest in the defendant's decision to testify.

The Constitution wisely commits the critical decision of whether the defendant shall take the stand to the defendant and his lawyer, rather than the judge, for at least two reasons. First, they have greater access to information bearing on the decision than the judge can normally have. Second, they are motivated solely by concern for the defendant's interests; *the judge inevitably is concerned with society's interest in convicting the guilty as well as protecting the innocent.* The choice, therefore, to testify or not to testify is for the defendant and his lawyer, not the judge, to make.

*Lakeside v. Oregon*, 435 U.S. 333, 344, 98 S.Ct. 1091, 1097, 55 L.Ed.2d 319 (1978) (Stevens, J. dissenting) (emphasis added) (court held that instruction to jury as to the effect of defendant's failure to testify was not error). Furthermore, "[t]here is also a danger that the judge will appear to encourage the defendant to invoke or to waive this right. This danger is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other." *Martinez*, 883 F.2d at 757 (citations omitted). Finally, it is axio-

matic that the decision to testify is usually "a matter of trial strategy between the defendant and counsel" which, obviously, should not involve the court. *Id.*

■ Consequently, when a court persuades a defendant to give up testifying, it exceeds its judicial power and authority and invades the province of the attorney-client relationship. "For the court to discuss the choice of [whether or not to testify] with the defendant would intrude into the attorney-client relationship protected by the sixth amendment." *Id.* The risk is so substantial that "[d]iscussing the issue directly with the defendant may inappropriately involve the judge in the unique attorney-client relationship, raising possible [s]ixth [a]mendment concerns[.]" *Goodwin,* 770 F.2d at 637. It matters not that defense counsel may have agreed with the court on the matter of testifying. Defendant was entitled to make the final personal determination of whether or not to do so in consultation with counsel, without the intervention of the court, whatsoever.

In this case, the outcome of the court's comments was a violation of Defendant's right to counsel. At the least, the court's comments amounted to undue influence. By persuading Defendant to relinquish his right to testify, the court assumed the role of defense counsel. The court's assumption of defense counsel's role was an interference with the attorney-client relationship protected by the sixth amendment of the United States Constitution and section 14 of article I of the Hawai'i Constitution which both guarantee Defendant's right to counsel.

As the court's statements were consistent with that of defense counsel's apparent advice, it is understandable that counsel did not object to the court's statements. Nevertheless, the court's intrusion into the attorney-client relationship was indisputable. Indeed, "[i]f a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request." *Ortega v. O'Leary,* 843 F.2d 258, 261 (7th Cir.1988), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1989). The intervention by the court constituted plain error of which we take notice. HRPP Rule 52(b).

## C.

We are, then, faced with the question of whether these errors were prejudicial or harmless under HRPP Rule 52(a). The errors, here, were violations of Defendant's constitutional rights. Generally, "before a ... constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Because provisions of the Hawai'i Constitution correspond to provisions of the United States Constitution, the application of the "harmless beyond a reasonable doubt" rule to the violation of Hawai'i constitutional rights would appear logical and consistent with our obligation to hold our own constitutional protections to "at least ... United States Supreme Court standards." *State v. Grahovac,* 52 Haw. 527, 533, 480 P.2d 148, 152 (1971).

■ The violation of Defendant's rights under the United States and Hawai'i Constitutions, then, are reviewable under the "harmless beyond a reasonable doubt rule," except for those rights, as we indicated *supra,* whose violation can never be treated as harmless because they are so basic to a fair trial. The harmless beyond a reasonable doubt rule would apply to constitutional error involving the right to testify, *Ortega v. O'Leary,* 843 F.2d 258 (7th Cir.1988), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988), and the right to counsel, *State v. Pokini,* 55 Haw. 640, 646, 526 P.2d 94, 101 (1974) (judge's remarks demeaning defense counsel before the jury infringed upon defendant's right to assistance of counsel).

■ In order for error to be harmless, it must be established that the error did not contribute to the conviction. *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 1257–58, 113 L.Ed.2d 302 (1991). Generally, in deciding whether the errors require us to vacate the conviction or not, we must examine the record as a whole. *State v. Toro,* 77 Hawai'i 340, 347, 884 P.2d 403, 410 (App. 1994).

We hold that the denial of the right to testify was prejudicial and not harmless beyond a reasonable doubt. The record does not indicate what Defendant would have testified to had he been allowed to testify. His conviction was essentially based on the uncontroverted testimony of Dilliner. Moriyama was not present and did not testify. It is impossible to conclude, beyond a reasonable doubt, that Defendant's testimony could not have created a reasonable doubt in the mind of the factfinder and, hence, that the error could not have contributed to the conviction.

As to the right to counsel, the transcript plainly demonstrates that Defendant's decision to forgo testifying was the direct result of the court's statements.[9] The record contains no evidence that Defendant's decision was anything but the product of the judge's admonitions. Again, we cannot conclude beyond a reasonable doubt that Defendant's testimony might not have created a reasonable doubt in the mind of the factfinder had the Defendant testified and the court not assumed the role of defense counsel in persuading Defendant not to do so. Therefore, we hold this error was also prejudicial and not harmless beyond a reasonable doubt.

### III.

For the foregoing reasons, we vacate the July 31, 1992 Judgment and remand the case for a new trial. We do not question the good faith of the trial judge but we think it appropriate that the case be retried before a different judge. *Cf. Schutter v. Soong,* 76 Hawai'i 187, 208 n. 6, 873 P.2d 66, 87 n. 6 (1994) (resentencing ordered before another judge because the judge had already determined defendant's sentence); *State v. Chow,* 77 Hawai'i 241, 251 n. 13, 883 P.2d 663, 673 n. 13 (App.1994).

---

9. *Compare United States v. Joelson,* 7 F.3d 174 (9th Cir.) *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993). There, after admonishing the defendant to listen to defense counsel, the court informed the defendant that it was not trying to tell defendant what to do, and the defendant had the opportunity to discuss the matter further with counsel during a recess. We do not decide whether such circumstances would amount to harmless error. Following the guidelines we have set forth, a court would not be in the dilemma the *Joelson* court created for itself.