902 P.2d 965

**Arland Kelly JONES, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee.**

No. 18014.

Supreme Court of Hawai'i.

Aug. 31, 1995.

Collin K.C. Lau, on the briefs, Honolulu, for petitioner-appellant.

Loren J. Thomas, Deputy Prosecuting Atty., on the briefs, Honolulu, for respondent-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

In 1991, petitioner-appellant Arland Kelly Jones was convicted of Murder in the Second Degree for the stabbing death of Susan Puli and sentenced to life imprisonment with the possibility of parole. On appeal, his conviction and sentence were affirmed by this court. *State v. Jones,* 74 Haw. 648, 840 P.2d 381 (1992) (mem.). On April 16, 1993, Jones filed a petition for post-conviction relief under Hawai'i Rules of Penal Procedure (HRPP) Rule 40. After a hearing, the circuit court entered its findings of fact, conclusions of law, and order denying Jones's Rule 40 petition. On appeal, Jones argues that the circuit court erred in concluding that his trial counsel had provided effective assistance of counsel with respect to Jones's failure to testify in his own defense. For the reasons set forth below, we affirm.

## I. BACKGROUND

Jones and Puli were in a relationship that lasted for about seven or eight years, but they never married. Puli had two daughters with Jones and two sons from a prior marriage. They all lived together in an apartment in Wai'anae until July 18, 1989, when Jones moved out.

On August 18, 1989, Jones went to a friend's house where he drank beer and freebased cocaine. At around 2:00 a.m. on August 19, 1989, Jones and his friend drove to Puli's apartment so Jones could give Puli a letter and a tape he had made. According to a witness who was at Puli's apartment that night, after Jones entered the apartment, he screamed at Puli because he had been writing letters and calling and had not received any response from her.

As Jones left the apartment, he took the keys to the door out of the dead bolt lock. Puli followed him down the stairs and demanded the keys back. They argued briefly outside before Jones left with her keys.

A few hours later, at approximately 7:15 a.m., Jones returned to Puli's apartment using the keys he had taken. Puli left her bedroom and went into the bathroom. Jones retrieved two knives from the kitchen and went to the bathroom door. The door was locked, but Jones was able to pick the lock with a hanger and entered the bathroom with the two knives. By the time the police arrived and were able to get into the bathroom, Puli had received multiple knife wounds and was dead.

Jones also had numerous knife wounds, apparently self-inflicted, and was rushed to the hospital in critical condition, where he underwent several hours of surgery. On the day after the surgery, while still in the hospital, Jones gave a statement to a Honolulu Police Department detective. The interview was recorded using audio and video recording devices.

In his statement, Jones explained, *inter alia,* that when he first went to Puli's apartment on August 19, 1989, he was upset because Puli would not allow him to see or talk to his children and he was trying to work out reasonable visitation arrangements, but Puli would not cooperate. He also explained that when he later returned, he could not get Puli to talk to him even after threatening her with the knives. He stated that he felt that life was not worth living if he could not see his children and, as a result, killed Puli and attempted to kill himself. Throughout the statement, Jones expressed his concern for his children.

A jury-waived trial was held in 1991. Jones did not contest the fact that he had intentionally or knowingly caused Puli's death, but contended that he had been acting under an extreme emotional disturbance for which there was a reasonable explanation, namely concern for the welfare of his children. He therefore argued that he should only be convicted of manslaughter by virtue of the mitigating defense set forth in HRS § 707–702(2) (Supp.1992).[1]

During the prosecution's case-in-chief, the statement made by Jones in the hospital, wherein he admitted to killing Puli but averred that concern for his children and Puli's refusal to allow him to see them had motivated his actions, was admitted into evidence. The prosecution, however, presented other evidence that Jones's overriding desire was to reconcile with Puli. For example, there was evidence that: (1) Jones made repeated attempts to reconcile with Puli by calling and writing letters; (2) he asked Puli's sister to deliver a package that contained an outfit Puli had previously admired, her favorite toothpaste, and money; (3) while freebasing with his friend, Jones talked obsessively about how much he missed Puli and that he was going to get her back any way he could; and (4) on August 19, 1989, he went to Puli's apartment at 2:00 a.m. to give her a letter and a tape he made.

Prior to the close of the prosecution's case-in-chief, Jones's attorney met with him and discussed whether Jones would be testifying in his own defense. Jones's attorney recommended that Jones refrain from testifying and explained to him the reasons for his recommendation. Among the reasons given were that: (1) Jones's videotaped statement had been admitted into evidence and supported the manslaughter defense; (2) expert testimony that had been presented by Harold Hall, Ph.D., and would be presented by Jack Annon, Ph.D., forensic psychologists testifying for the defense, supported the manslaughter defense; and (3) if Jones took the stand, he would be subject to cross-examination by an experienced prosecutor.

Jones's attorney had prepared a written waiver form and brought it to the meeting for Jones to sign. Jones signed the waiver form with the understanding that, by signing the form, he was waiving his right to testify in his own behalf. Thereafter, Jones never told his attorney that he wished to testify, though he did occasionally complain to his attorney about lies or inaccuracies in the evidence that was presented against him. When the defense eventually rested, Jones had not testified.

The written waiver of the right to testify that was signed by Jones was not entered into the record, and the trial court did not engage in a colloquy with Jones to determine whether he knowingly and voluntarily waived his right to testify.

The trial court thereafter found that Jones was suffering from an emotional disturbance at the time of the stabbing, but further found that the emotional disturbance was neither extreme nor reasonably explained. Consequently, the court convicted Jones of murder in the second degree and sentenced him to life imprisonment with the possibility of parole.

---

1. HRS § 707–702(2) provides:

 In a prosecution for murder in the first and second degrees it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he [or she] caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he [or she] believed them to be.

On direct appeal, Jones alleged that the trial court's findings of fact were clearly erroneous and that there was insufficient evidence to sustain the circuit court's judgment. We rejected Jones's arguments and affirmed the trial court's judgment in a memorandum opinion dated October 22, 1992. *State v. Jones,* 74 Haw. 648, 840 P.2d 381 (1992) (mem.).

■ On April 16, 1993, Jones filed a petition for post-conviction relief pursuant to HRPP Rule 40, and, on February 4, 1994, the circuit court held a hearing on Jones's Rule 40 petition.[2] At the hearing, Jones testified that his trial attorney had not told him that the decision to testify was his decision to make or that he could change his mind about testifying even after signing the written waiver. In addition, Jones explained what his testimony would have been if he had testified at trial. In essence, Jones would have offered testimony (1) denying that he was a "jilted lover" who wanted to reconcile with Puli, (2) describing the history of problems that he and Puli had experienced, (3) asserting that he was distressed because of concern for his children and explaining the reasons for his fears, and (4) providing explanations regarding various pieces of circumstantial evidence that had been presented against him—e.g., the circumstances surrounding his moving out of the apartment, the intent behind a letter he had given to Puli that was characterized by the prosecution as an attempt at reconciliation, and an alleged threat to Puli made on August 19, 1989, wherein Jones said, "Susan, your ass is mine."

Jones's trial attorney also testified at the Rule 40 hearing. He testified that he did not recall ever discussing Jones's decision not to testify after the written waiver had been signed, but was sure that he had stressed to Jones that the decision whether or not to testify was his decision to make.

On March 18, 1994, the circuit court entered its findings of fact, conclusions of law, and order denying Jones's petition for post-

conviction relief. This timely appeal followed.

## II. *DISCUSSION*

### A. *Right to Testify*

■ "A defendant's right to testify in his or her own defense is guaranteed by the constitutions of the United States and Hawai'i and by a Hawai'i statute." *Tachibana v. State,* 79 Hawai'i, 226, 231, 900 P.2d 1293, 1298 (1995) (quoting *State v. Silva,* 78 Hawai'i 115, 122, 890 P.2d 702, 709 (App.1995)). This right "may not be waived by counsel as a matter of trial strategy but may be relinquished only by the defendant." *Id.,* 79 Hawai'i at 232, 900 P.2d at 1299 (citations and quotation marks omitted).

■ Jones argues that he did not knowingly and voluntarily waive his right to testify and urges this court to require that the trial courts "conduct some type of colloquy with a defendant before a defendant waives his fundamental right to testify in his own behalf." We addressed this precise issue in *Tachibana, supra,* and held that "in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." *Tachibana,* at 236, 900 P.2d at 1303 (footnotes omitted). However, we further held that the colloquy requirement "shall only apply prospectively to cases in which trial is not completed until after the date of this decision. In all other cases, . . . post-conviction evidentiary hearings will be required to resolve claims that a defendant's right to testify was usurped by his or her attorney." *Id.* at 238, 900 P.2d at 1305 (footnotes omitted).

■ In the instant case, the circuit court conducted such an evidentiary hearing. The findings of fact made by the circuit court in denying Jones's petition included a finding that "the Defendant was properly advised of his right to testify and of his subsequent

---

2. Jones originally raised nine grounds in his Rule 40 petition. Aside from the issue of the waiver of his right to testify, however, none of the other eight grounds were re-raised in the subsequent

Rule 40 hearing or in this appeal. Consequently, pursuant to Hawai'i Rules of Appellate Procedure Rule 28(b)(4), we will not address those grounds.

waiver, and that he knew of that right and knowingly and intelligently waive [sic] that right."[3] On appeal, findings of fact "are reviewed under the clearly erroneous standard. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Tachibana,* at 231, 900 P.2d at 1298 (quoting *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)).

Based on our review of the record, particularly the testimony presented by Jones's trial counsel, we hold that the circuit court's findings that Jones was properly advised of his right to testify and that he knowingly and intelligently waived that right were not clearly erroneous. Therefore, to the extent that Jones's petition was based on an alleged violation of his right to testify, we hold that the circuit court did not err in denying the petition.

## B. *Ineffective Assistance of Counsel*

 In *Tachibana, supra,* we recognized that, in the context of the decision to call the defendant as a witness, a claim of ineffective assistance of counsel can be maintained that is conceptually distinct from a claim that a defendant's right to testify was violated. *See Tachibana,* at 231, 900 P.2d at 1298. Although the decision whether or not to testify is ultimately committed personally to the defendant, we recognize that the defendant's decision will ordinarily be made "in consultation with counsel." *Silva,* 78 Hawai'i at 125, 890 P.2d at 712. Defense counsel will be called upon to explain the pros and cons of testifying to assist the defendant in reaching his or her decision.[4] *See id.* at 124, 890 P.2d at 711 ("One of defense counsel's responsibili-

ties is to advise the defendant on the question of whether or not he or she should testify."). Consequently, a claim can be made that a defendant's attorney provided ineffective assistance in advising the defendant whether or not to testify.

 Generally, "[i]n assessing claims of ineffective assistance of counsel, the applicable standard is whether, viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan,* 76 Hawai'i at 427, 879 P.2d at 532 (citation and quotation marks omitted). In order to establish that the assistance provided was not within that range, "a petitioner must show: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Domingo v. State,* 76 Hawai'i 237, 241, 873 P.2d 775, 779 (1994) (citation and quotation marks omitted).

 Because the decision whether or not to testify is a highly tactical one that is "ultimately committed to a defendant's own discretion," *Tachibana,* at 232, 900 P.2d at 1299 (quoting *Silva,* 78 Hawai'i at 124, 890 P.2d at 711), an attorney's recommendation as to whether or not a defendant should testify will rarely qualify as an error reflecting a "lack of judgment." *Cf. State v. Reed,* 77 Hawai'i 72, 84, 881 P.2d 1218, 1230 (1994) ("the decision whether to call a witness in a criminal trial is normally within the judgment of counsel and, therefore, will rarely be second-guessed by judicial hindsight"). On the other hand, the provision of erroneous legal advice to a defendant by trial counsel— e.g., misinforming the defendant as to the

---

3. The only inadequacies that Jones had alleged with respect to the advice his trial counsel had given him regarding his right to testify were that his attorney had not advised him that the decision whether or not to testify was his decision to make or that, despite having signed the written waiver, he was free to change his mind at any time before the end of trial. Because these were the only alleged inadequacies, we construe the circuit court's finding that Jones "was properly advised of his right to testify" as a finding that the alleged inadequacies did not occur.

4. Even when the colloquy requirement established in *Tachibana* goes into effect, the court's role will be "limited to making sure that the defendant understands his or her rights and ensuring that the defendant's final decision is made voluntarily, with no coercion or undue influence." *Tachibana,* at 235 n. 5, 900 P.2d at 1302 n. 5 (quoting *Silva,* 78 Hawai'i at 124, 890 P.2d at 711).

types of evidence that can be used to attack his or her credibility on cross-examination, *see People v. Mosqueda*, 5 Cal.App.3d 540, 546, 85 Cal.Rptr. 346, 349 (1970) (considering defendant's claim that "he did not testify at his trial because the public defender erroneously advised him that if he testified the People could impeach him by disclosing his past criminal record to the jury")—could constitute a "lack of skill." Likewise, an attorney's failure to perform sufficient investigation and trial preparation to be able to adequately advise a defendant whether or not to testify—e.g., by failing to ascertain the full scope of the testimony that the defendant has to offer—could constitute a "lack of diligence."

In the event that defense counsel's lack of skill, judgment, or diligence is established, the petitioner must further demonstrate the withdrawal or substantial impairment of a potentially meritorious defense resulting therefrom. *Domingo*, 76 Hawai'i at 241, 873 P.2d at 779. In the context of faulty advice that allegedly influenced the decision not to testify, a two-prong test must be satisfied. The petitioner must show (1) that, absent defense counsel's failings, the petitioner would have decided to testify, and (2) that there is a reasonable possibility, *see Dan*, 76 Hawai'i at 427, 879 P.2d at 532 ("whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker"), that his or her testimony could have established or supported an available defense.[5]

In the instant case, Jones alleged that his trial counsel had failed to advise him that the decision whether or not to testify

was his decision to make and that, despite having signed the written waiver, he was free to change his mind at any time before the end of trial. The circuit court found that Jones's attorney had not failed to so advise Jones[6] and, as we held in section II.A, *supra*, that finding was not clearly erroneous. Aside from that allegation, there is nothing in the record suggesting that the advice given by Jones's trial counsel was in any way lacking. Thus, we hold that Jones failed to establish any error or omission reflecting a lack of skill, judgment, or diligence.

Moreover, the circuit court specifically found that "[w]ith regard to the areas which [Jones] indicates he wished to testify to, ... based on the testimony presented at the hearing on the Petition, there was no impairment of any defense which were [sic] presented on [Jones]'s behalf." Based on our review of the record, we hold that this finding was not clearly erroneous.

## III. CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err in denying Jones's petition for post-conviction relief. Accordingly, we affirm.

---

**5.** An analogous claim of ineffective assistance can be made if defense counsel's faulty advice led the petitioner to decide to testify. Similarly, in the context of any of the decisions that are ultimately committed personally to the petitioner, *see Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (Burger, J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury or testify in one's own behalf are ultimately for the accused to make"), *reh'g denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), claims of ineffective assistance can be based on the advice provided by defense counsel. *See Domingo*, 76 Hawai'i at

241–42, 873 P.2d at 779–80 (suggesting that "the decision to waive jury trial could, in appropriate circumstances, implicate a claim of ineffective assistance of counsel"). Indeed, one of the grounds originally raised by Jones in his Rule 40 petition was that, although he had made an on-the-record waiver of his right to a jury trial, his trial attorney had "never fully advised [him] about the full consequences of waiving his right to a trial by jury[.]" That issue, however, is not a subject of this appeal. *See supra* note 2.

**6.** *See supra* note 3.