**Electronically Filed
Supreme Court
SCWC-15-0000569
19-MAR-2018
08:21 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

ALBERT BATALONA,
Petitioner and Respondent/Petitioner-Appellant,

vs.

STATE OF HAWAIʻI,
Respondent and Petitioner/Respondent-Appellee.

SCWC-15-0000569

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000569; S.P.P. NO. 10-1-0096; CR. NO. 99-1549)

MARCH 19, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

This case arises from a challenge by Albert Batalona
to the order of the Circuit Court of the First Circuit (circuit
court) that denied without a hearing Batalona's post-conviction
petition, which raises twenty-four grounds for relief.

1

On appeal, the Intermediate Court of Appeals (ICA) held that the circuit court erred in denying without a hearing Batalona's claims in his petition relating to defense counsel's failure to challenge a prospective juror for cause and to secure at trial the attendance of a co-participant in the robbery whose out-of-court statement was admitted against Batalona. The ICA otherwise affirmed the circuit court's order denying the petition.

Both the State of Hawai'i and Batalona applied to this court for a writ of certiorari. In his certiorari application, Batalona contests the ICA's decision insofar as it affirmed the circuit court's order as to the other twenty-two grounds raised in his petition. The State's application challenges the ICA's determination that defense counsel's failure to attempt to obtain the co-participant's attendance at trial raises a colorable claim for relief.

First, with regard to Batalona's certiorari application, we hold that grounds 8 and 10 of his petition, which assert that defense counsel's failure to challenge the denial of Batalona's request for a copy of discovery materials resulted in the impairment of his right to present a complete defense and adversely affected his waiver of the right to

2

testify, raise colorable claims for relief.  We otherwise affirm the ICA's denial of a hearing with regard to the remaining grounds set forth in the petition except as to ground 18, which we dismiss without prejudice.

Second, with respect to the State's certiorari application, we affirm the ICA's determination that ground 20(f) of Batalona's petition, which asserts that defense counsel failed to exercise a good faith effort to obtain the co-participant's attendance at trial, raises a colorable claim for relief.

Accordingly, we remand this case to the circuit court for further proceedings in accordance with this opinion.

## I.  BACKGROUND

On July 12, 1999, Batalona, Sean Matsunaga, and Jacob Hayme were charged by complaint with bank robbery, in violation of 18 United States Code § 2113(a), in the United States District Court for the District of Hawaii.  Matsunaga and Hayme were additionally charged with firearm violations.  The complaint against Batalona was subsequently dismissed without prejudice at the request of the United States Attorney.

On August 11, 1999, a circuit court grand jury indicted Batalona on seventeen counts under state law, including

3

the following: robbery in the first degree in violation of

Hawaii Revised Statutes (HRS) § 708-840(1)(b)(ii)[1] (count 1);

attempted murder in the first degree in violation of HRS §§ 705-

500,[2] 707-701(1)(b),[3] and 706-656[4] (count 2); carrying, using, or

---

[1]     A person commits the offense of robbery in the first degree
        if, in the course of committing theft:
              . . .
              (b) The person is armed with a dangerous instrument
        and:
                    . . .
                    (ii) The person threatens the imminent use of
        force against the person of anyone who is present with
        intent to compel acquiescence to the taking of or escaping
        with the property.

HRS § 708-840(1)(b)(ii) (Supp. 1998).

[2]     (1) A person is guilty of an attempt to commit a crime if
        the person:
              (a) Intentionally engages in conduct which would
        constitute the crime if the attendant circumstances were as
        the person believes them to be; or
              (b) Intentionally engages in conduct which, under the
        circumstances as the person believes them to be,
        constitutes a substantial step in a course of conduct
        intended to culminate in the person's commission of the
        crime.
        (2) When causing a particular result is an element of the
        crime, a person is guilty of an attempt to commit the crime
        if, acting with the state of mind required to establish
        liability with respect to the attendant circumstances
        specified in the definition of the crime, the person
        intentionally engages in conduct which is a substantial
        step in a course of conduct intended or known to cause such
        a result.
        (3) Conduct shall not be considered a substantial step
        under this section unless it is strongly corroborative of
        the defendant's criminal intent.

HRS § 705-500 (1993).

[3]     "A person commits the offense of murder in the first degree if
the person intentionally or knowingly causes the death of: . . . A peace

(continued . . .)

threatening to use a firearm in the commission of a separate

felony in violation of HRS § 134-6(a) and (e)[5] (count 3); and

possession of a prohibited firearm in violation of HRS § 134-8(a)[6] (count 17).  The State thereafter filed a motion for nolle

---

(. . . continued)

officer, judge, or prosecutor arising out of the performance of official duties[.]"  HRS § 707-701(1)(b) (1993).

[4]      "Persons convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without the possibility of parole."  HRS § 706-656(1) (1993).

[5]      HRS § 134-6 (repealed 2006) provided in relevant part as follows:

>        (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not . . . .
>             . . .
>        (e) Any person violating subsection (a) or (b) shall be guilty of a class A felony.  Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class B felony.  Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a class C felony.

HRS § 134-6(a), (e).

[6]      The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or

(continued . . .)

5

prosequi of counts 4 through 16, which the circuit court granted.

## A. Pretrial Request for Discovery

At a pretrial hearing, defense counsel requested permission from the circuit court to give Batalona a redacted copy of the discovery that defense counsel had received.[7] Defense counsel indicated that he had been provided approximately 3,000 pages of discovery and that it was important for Batalona to receive the discovery because each witness was going to testify as to events that occurred on the day of the incident. The circuit court denied defense counsel's request, expressing its concern that, if Batalona were permitted to have a copy of the discovery, then the court will "have every defendant always asking for information." The court added that "there's very few information that any defendant really needs to understand in terms of the details of a case" and that defense

_____

(. . . continued)

> any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

HRS § 134-8(a) (1993).

[7] Counsel informed the court that the discovery materials would be redacted to remove any personal information of the witnesses.

counsel "can go to the prison and discuss it with [Batalona]." Defense counsel responded that it would probably take about one to two months to review the discovery with Batalona because he was incarcerated and argued that Batalona was entitled to review the reports and witness statements against him "word by word." The court responded that "[t]here are other ways" and denied counsel permission to provide a copy of the redacted discovery to Batalona.

## B. Pretrial Motions

Hayme and Matsunaga, who were co-participants in the robbery, both reached plea agreements with the federal government. In Matsunaga's Memorandum of Plea Agreement, he admitted his involvement in the robbery and identified Batalona as the person who was responsible for shooting at the officer. Two days later, Matsunaga provided a recorded statement in which he implicated himself as the person who shot at the officer. Hayme also provided a recorded statement, in accordance with his Memorandum of Plea Agreement, which was both inculpatory and exculpatory as to his involvement in the charged offenses in this case.[8]

_____

[8]    In their respective plea agreements, Hayme and Matsunaga agreed to plead guilty to bank robbery and a firearm offense in exchange for the

(continued . . .)

7

On July 17, 2000, the State filed a motion in limine seeking to preclude, inter alia, the admission of Matsunaga's recorded statement at trial. In its motion, the State noted that it did not appear that either Hayme or Matsunaga would be testifying at trial. Batalona opposed the State's motion, arguing, inter alia, that Matsunaga's recorded statement was admissible pursuant to the hearsay exceptions regarding public records and reports and statements against interest.

The State's motion was heard on July 20, 2000, and the State reiterated that Matsunaga would not testify at trial.[9] The State contended, alternatively, if Matsunaga's statement was admitted into evidence, his Memorandum of Plea Agreement, as well as Hayme's recorded statement, would also have to be admitted. In response, Batalona maintained that Matsunaga's recorded statement was admissible and additionally noted that it

---

(. . . continued)

United States' agreement to dismiss one count of the information, to not charge them with any additional charges arising from the July 7, 1999 bank robbery, and, in its discretion, to move the sentencing court to reduce the sentence based on the assistance provided. Hayme and Matsunaga also agreed to testify truthfully at any federal or state trials, hearings, or other proceedings involving codefendants and others. They further agreed not to assert any privilege to refuse to testify in any federal or state trial involving or related to the crimes for which they were charged.

[9] The Honorable Marie N. Milks presided over all proceedings related to the trial in this case.

was the defense's desire to call Hayme and Matsunaga to determine whether they would invoke their privilege against self-incrimination.  Batalona argued that he had a constitutional right to confront witnesses and a constitutional right to present his defense.

The circuit court ruled that, if Batalona introduced Matsunaga's recorded statement, both that statement and Matsunaga's Memorandum of Plea Agreement would be admitted as evidence.  As to Hayme's recorded statement, the court determined that the introduction of that statement alone--so long as the statement was inculpatory to Hayme and fell within a hearsay exception--would be permitted.  The court suggested that both parties should attempt to get live witnesses, to which the State responded, "We can't get them."  The court reiterated that "you should first try that," and the State responded, "We've tried that."

On July 24, 2000, the State filed a motion for redaction of Hayme's and Matsunaga's statements, attaching both statements and requesting that specific pages and lines be redacted.  The following day, Batalona filed a second supplemental motion in limine, seeking an order precluding any references to portions of any statement that do not fall within

an exception to the hearsay rule or that violate Batalona's constitutional right to confrontation.

A hearing on both parties' motions was held on July 31, 2000.  The transcript of this portion of the hearing is not part of the record on appeal.

### C. Trial and Appeal

A jury trial took place from July 27, 2000, through August 11, 2000.  At trial, the following evidence was adduced.  On July 7, 1999, Batalona, Hayme, Matsunaga, and Roger Dailey were involved in an armed robbery of the American Savings Bank located at 1215 Hunakai Street in Kahala, Hawai'i.  At approximately 10:00 a.m., Batalona, Hayme, Matsunaga, and Dailey entered the bank wearing ski masks and dark clothes; bank employees and customers were ordered to get on the floor and keep their eyes on the ground.  The four men removed approximately $120,000 from the cash drawers and the tellers' cash dispensers and exited the bank.  Batalona and Matsunaga were each carrying an AR-15 military assault rifle, Dailey held a .357 revolver, and Hayme was armed with an AK-47 military assault rifle.

At approximately 10:03 a.m. on that day, Honolulu Police Department (HPD) Officer Frederick Rosskopf--who was on

10

duty and in uniform--was dispatched to the American Savings Bank in Kahala to investigate the activation of the bank's silent alarm. Officer Rosskopf parked his car on the side of the street on which the bank was located and then walked along the sidewalk toward the bank. As he approached the bank's parking lot, Officer Rosskopf saw a male wearing a dark ski mask and dark clothing, who appeared to be standing behind a vehicle-- "like a roof of a car in front of him." The masked male had a rifle to his right shoulder, which was aimed directly at Officer Rosskopf. The masked male immediately opened fire upon seeing Officer Rosskopf, causing Officer Rosskopf to dive for cover behind a white compact car. The rate of fire quickened, pinning Officer Rosskopf behind the car. Some of the rounds hit the car that Officer Rosskopf used as cover. Officer Rosskopf returned fire but took cover again as the masked male continued firing at him. The rate of fire eventually slowed to a stop. Officer Rosskopf received some scratches and bruises as a result of the incident.

Dailey testified that Batalona stood "in the door jamb on the passenger side" of the vehicle during the exchange of gunfire, Batalona's weapon was pointed in the direction of

Officer Rosskopf's car, Batalona fired first, and Hayme and Matsunaga were still in the bank when the shooting started.[10]

Siosaia Talakai, a friend whom Batalona stayed with following the robbery, and who was called as a witness by the State, testified that Batalona told him that he did not intend to kill Officer Rosskopf and that his main concern was to get away.

Following the exchange of gunfire, Officer Rosskopf saw a white Blazer--which was used as a getaway car--exiting the parking lot of the American Savings Bank driven by a man wearing a black ski mask and dark clothing. After providing dispatch with a description of the vehicle and the vehicle's direction of travel, Officer Rosskopf proceeded toward the bank parking lot. Upon reaching a wooden fence, Officer Rosskopf saw another male wearing a dark ski mask running toward Kahala Mall. Officer Rosskopf could not tell whether that masked male was the same person who shot at him.

---

[10] Dailey also reached a plea agreement with the federal government in which he agreed to plead guilty to bank robbery in exchange for the United States' agreement to not charge him with any additional charges arising from the July 7, 1999 bank robbery, and, in its discretion, to move the sentencing court to reduce the sentence based on the assistance provided. The other terms of the plea agreement were similar to Hayme's and Matsunaga's plea agreements. See supra note 8.

Hiroshi Inouye, a delivery driver for the Makiki Bake Shop, was delivering bread and other baked goods using the shop's van when a man wearing a ski mask came in front of the vehicle, causing Inouye to stop the van. The masked man, who was carrying what appeared to be an automatic rifle, opened the van door, asked for the keys, and ordered Inouye out of the van; Inouye complied. The masked man then drove off with the van. The State argued in closing argument that Batalona was the masked man who shot at Officer Rosskopf and who took the van.

The van was recovered by police and returned to the owner of the Makiki Bake Shop the day after the robbery. Approximately two weeks later, a rifle magazine was discovered in the passenger side door of the van. The magazine, which had four remaining cartridges, was turned over to police by the Bake Shop owner and later admitted into evidence at trial.

Pursuant to an investigation conducted by HPD, it was discovered that two weapons were fired on the day of the robbery: the AK-47 that was later recovered from Hayme's home and one of the AR-15s. In addition, officers learned that, about two or three weeks prior to the bank robbery, Batalona, Dailey, Hayme, and Matsunaga went pig hunting at Waiahole Ranch, where Batalona fired an AR-15 rifle. Police also learned that

13

Batalona was a range instructor at the Diamond Head Gun Shop. HPD recovered, inter alia, twenty-nine cartridge casings and a magazine containing thirty cartridges from the bank parking lot and twenty shell casings from Waiahole Ranch. The two AR-15 rifles that were apparently used in the course of the robbery were not recovered.

Hayme did not testify, but a redacted version of his recorded statement was offered by the State, admitted into evidence,[11] and played for the jury.[12] The recorded statement was given--as part of his plea agreement with the federal government--the day after Hayme pled guilty to robbery and a firearm violation in federal court. In his statement, Hayme said that all four robbers were on the passenger side of the Blazer during the exchange of gunfire. Hayme stated that he did not fire his weapon until after shots were fired. He also stated that one person was mounted on top of the Blazer; that

---

[11] The redacted version of Hayme's recorded statement was admitted into evidence on August 2, 2000. Defense counsel indicated that there was no objection to its admission into evidence except for whatever had been discussed previously. The previous discussions regarding Hayme's statement appear to relate to the hearings that were held on July 20, 2000 and July 31, 2000.

[12] The redacted version of Hayme's recorded statement that was admitted into evidence is not included in the record on appeal and is not available. As a result, the substance of Hayme's admitted statement is drawn from the State's and the defense's closing arguments.

person--who was not Hayme--was firing at Officer Rosskopf. Hayme further said that he fired about two rounds "[m]aybe just in the air" and that he did not shoot at Officer Rosskopf.

The State also presented the testimony of Curtis Kubo and Charles Davis, experts in firearms and ballistics. The firearms and ballistics evidence indicated that the magazines recovered from the bakery van and the bank parking lot were manufactured to function with either an AR-15 or an M-16 rifle. In addition, twenty-five of the twenty-nine cartridge casings recovered from the bank parking lot were fired from an AR-15, which was the same AR-15 that fired the twenty cases recovered from the ranch. The AR-15 is also chambered for the type of ammunition found in the magazine recovered from the bakery van.

Following the conclusion of the State's case-in-chief, the defense moved for judgment of acquittal, which motion the court denied. The defense offered a redacted version of the recorded statement of Matsunaga, who did not testify. The redacted statement was admitted into evidence and played for the jury.[13] In his statement, Matsunaga said that on the day of the

_____

[13] Matsunaga's redacted statement, as admitted at trial, is also not included in the record on appeal and is not available. Hence, the substance of Matsunaga's recorded statement that was played for the jury is drawn from the parties' closing arguments.

incident he was the last person out of the bank, he had an AR-15 rifle, and he shot at Officer Rosskopf. Matsunaga's recorded statement contradicted his version of events as set forth in his Memorandum of Plea Agreement, in which he stated that Batalona fired numerous rounds at Officer Rosskopf.[14]

The circuit court subsequently advised Batalona of his rights to testify and not to testify; Batalona elected not to testify, and the defense rested.

The circuit court instructed the jury on the lesser included offenses of attempted murder in the first degree, attempted assault in the first and second degree, and reckless endangering in the first degree. Batalona requested that the court also instruct the jury on attempted murder in the second degree, attempted reckless manslaughter, and assault against a police officer, which instructions the court refused. The parties then presented closing arguments.

The jury found Batalona guilty as charged on all four counts. The circuit court sentenced Batalona to the following: count 1, twenty years imprisonment with a mandatory minimum term

---

[14] During the State's case-in-chief, Matsunaga's Memorandum of Plea Agreement and the proffer letter he received from the United States Attorney's Office were stipulated into evidence--subject to Batalona's prior objections.

of fifteen years imprisonment; count 2, life imprisonment without the possibility of parole; count 3, twenty years imprisonment with a mandatory minimum term of fifteen years imprisonment; and count 17, five years imprisonment with a mandatory minimum term of five years. All of the terms of imprisonment were ordered to run concurrently unless there were other sentences for which Batalona was already serving. The court also imposed restitution in the amount of $6,244.02. Judgment of conviction and sentence was entered on October 11, 2000, from which Batalona appealed. On October 9, 2003, this court affirmed the judgment of conviction and sentence in a summary disposition order. State v. Batalona, No. 23820, 2003 WL 22311769 (Haw. Oct. 9, 2003) (SDO).

### D. Petition for Post-Conviction Relief

On December 8, 2010, Batalona--proceeding pro se-- filed a petition for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure Rule 40 (petition), asserting twenty-two grounds for relief. Batalona filed a motion to supplement his petition with ground 23, which the circuit court granted. Batalona later filed a supplemental ground 24. Of the twenty-four grounds raised in the petition, nineteen involve allegations of ineffective assistance of counsel; three involve

17

allegations of illegality in the sentence Batalona received; one involves an allegation of post-conviction denial of access to discovery; and one involves an allegation of cumulative errors and omissions that would preclude instructions on lesser included offenses in a retrial.

Following a series of ex parte motions by the State to extend the time to file its response, which were primarily related to the State's ongoing efforts to obtain a declaration from defense counsel, the State filed its answer to the petition on November 17, 2011.[15] Batalona thereafter filed a reply to the State's answer.

On January 25, 2012, the State filed a supplemental answer to the petition, which includes a declaration from defense counsel (Declaration).[16] In his Declaration, defense counsel stated that any error or omission on his part relating to Batalona's claims of ineffective assistance of counsel, as alleged in grounds 1-6, 8-9, 13-17, 19-21, and 23 of the petition, did not result in the substantial impairment of a

---

[15] After the State filed its answer to the petition, it moved for issuance of an order to show cause in order to obtain defense counsel's declaration.

[16] Batalona's counsel at trial and on direct appeal was David Klein, Esq.

meritorious claim or defense and/or was the result of a strategic or tactical decision. As to ground 10, which involves an allegation relating to counsel's advice that Batalona should not testify at trial, defense counsel stated that the circuit court conducted a colloquy with Batalona regarding his right to testify as required by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), adding that any privileged communications between Batalona and him would not be disclosed without a court order indicating the privilege was waived. As to grounds 7, 11-12, 18, and 22, which involve allegations regarding the propriety of Batalona's sentence, post-conviction denial of access to discovery, and cumulative errors and omissions relating to a retrial, defense counsel declared that these allegations did not relate to a claim of ineffective assistance of counsel.

On July 1, 2015, the circuit court issued its "Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief Without a Hearing" (Order).[17] The court concluded that Batalona's claims of ineffective assistance of counsel in grounds 1-6, 8-10, 13-17, 19-21, and 23

_____

[17] The Honorable Colette Y. Garibaldi presided over the post-conviction proceedings.

19

were "patently frivolous and without a trace of support" because Batalona failed to point to specific errors or omissions by defense counsel resulting from a lack of skill, judgment, or diligence.[18]  The circuit court also concluded that grounds 7, 11, 12, 18, and 22 were patently frivolous and without a trace of support either in the record or from the evidence submitted by Batalona.  Concluding that Batalona failed to demonstrate the existence of a colorable claim that would have required a hearing before the circuit court, the court denied Batalona's petition without a hearing.[19]  Batalona filed a notice of appeal to the ICA.

## II. ICA PROCEEDINGS

In his opening brief, Batalona asserted that the circuit court erred in denying a hearing on twenty-one of the twenty-three grounds raised in the petition and in not addressing ground 24.[20]  Specifically, with regard to ground 1,

---

[18]  The circuit court provided no further explanation for its ruling on Batalona's claims relating to ineffective assistance of counsel.

[19]  The circuit court did not address supplemental ground 24, in which Batalona argues that defense counsel was ineffective for failing to call witnesses to show that Batalona was inside the bank when shots were fired.

[20]  Batalona did not challenge the circuit court's denial of a hearing on grounds 11 and 12.  With regard to the other twenty-two grounds, Batalona's contentions on appeal parallel those stated in his petition.  The

(continued . . .)

Batalona argued that defense counsel provided ineffective assistance by being compelled to use peremptory challenges--that Batalona wanted to use to excuse other jurors--on two prospective jurors who should have been challenged and excused for cause.

As to ground 20(f), Batalona argued that defense counsel provided ineffective assistance by failing to secure the attendance of Hayme and Matsunaga at trial. Batalona submitted that Hayme and Matsunaga gave investigators recorded statements that were both favorable and contrary to Batalona's interests. Redacted versions of those statements, Batalona continued, were admitted into evidence and published to the jury in violation of his right to confrontation of witnesses.

In its answering brief, the State argued, inter alia, that Batalona's claim in ground 1 failed as a matter of fact because Batalona did not demonstrate that the prospective jurors who allegedly should have been excused for cause were in fact selected as jury members in Batalona's trial. In the

---

(. . . continued)

ICA's memorandum opinion individually addressed grounds 1 and 20(f), and therefore these grounds are summarized here. The remaining grounds in the petition that were denied without a hearing and that Batalona raised on appeal and certiorari will be addressed infra.

21

alternative, the State contended that Batalona's claim failed as a matter of law because Batalona did not show that the prospective jurors had biases favoring law enforcement.

As to ground 20(f) of Batalona's petition, the State asserted that the transcripts and the recordings of Hayme's and Matsunaga's statements were admitted into evidence as defense exhibits.[21]  In addition, the State argued that defense counsel used Hayme's and Matsunaga's statements in closing argument to support the defense theory that Batalona was not the person who shot at Officer Rosskopf.  The State contended that the decision to call a witness to testify is a tactical one that is typically within the judgment of defense counsel.

In his reply brief, Batalona contended that the issue in ground 1 was not whether the prospective jurors actually served on the jury, but rather, counsel's expending of peremptory challenges on prospective jurors whom the circuit court should have excused for cause had they been so challenged. Thus, according to Batalona, he was left with no peremptory challenges to use on other jurors having ties to law enforcement and who ended up serving on the jury in his case.

---

[21]  The transcript indicates that Hayme's redacted statement was admitted as State's Exhibit 160.

22

As to ground 20(f), Batalona replied that the use of the recordings and the transcripts of Hayme's and Matsunaga's statements would have been permitted if Hayme and Matsunaga were unavailable, which they were not. Batalona reiterated that defense counsel's failure to secure the attendance of Hayme and Matsunaga violated his right to confrontation.

In its memorandum opinion, the ICA determined as to ground 1 that it was unclear whether defense counsel would have succeeded in having the first of the two prospective jurors identified by Batalona excused for cause, as the juror showed no bias in favor of law enforcement. However, the ICA concluded that the second prospective juror may have demonstrated sufficient bias against Batalona that defense counsel could have succeeded in challenging that juror for cause, thus preserving one of his peremptory challenges to excuse another prospective juror. Concluding that defense counsel's basis for not challenging the second prospective juror for cause was unclear and that his Declaration did not provide an adequate explanation, the ICA held that Batalona raised a colorable claim and that the circuit court therefore erred in denying ground 1 of Batalona's petition without a hearing.

Turning to ground 20(f), the ICA held that the admission of Matsunaga's recorded statement did not violate Batalona's Sixth Amendment right to confrontation because Batalona himself introduced Matsunaga's statement at trial. As to Hayme's statement, the ICA determined that the statement was testimonial and that the record was unclear whether Hayme was really unavailable. The ICA found that, while Hayme apparently refused to testify, there did not appear to be any evidence that the State made an effort in good faith to secure Hayme's attendance at trial. Had Hayme testified, the ICA continued, Batalona may have cast reasonable doubt on the State's theory that Batalona shot at Officer Rosskopf because, as the State conceded, Hayme also fired his weapon during the robbery. As a result, if defense counsel did not subpoena Hayme, the ICA determined that such a failure may have resulted in the withdrawal or the substantial impairment of a potentially meritorious defense. Because defense counsel's Declaration did not adequately address his decision not to subpoena Hayme, the ICA concluded that the circuit court should have held a hearing on this portion of ground 20(f) of Batalona's petition.

Accordingly, the ICA vacated the circuit court's Order and remanded the case for a hearing on grounds 1 and 20(f). As

24

to the remaining grounds, the ICA affirmed the circuit court's denial of a hearing, concluding--without individually addressing--that "the other twenty-one separate grounds, as well as the other subparts of Ground 20 in Batalona's Rule 40 Petition . . . are patently frivolous and [are] without a trace of support either in the record or from other evidence submitted by [Batalona]."

Batalona filed an application for a writ of certiorari challenging the ICA's decision that affirmed the circuit court's denial of a hearing on the other twenty-one grounds.  The State also filed an application, arguing that the ICA erred in holding that the circuit court should have held a hearing on ground 20(f) regarding defense counsel's failure to subpoena Hayme.[22]

### III. STANDARD OF REVIEW

"The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court."  Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532

---

[22]   The State did not challenge the ICA's ruling on ground 1 that defense counsel's failure to challenge a juror for cause raises a colorable claim.

25

(1994) (emphasis omitted) (quoting State v. Allen, 7 Haw. App. 89, 92-93, 744 P.2d 789, 792-93 (1987)).  In determining whether a Rule 40 petition raises a colorable claim, "the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue."  Id.

## IV. DISCUSSION

### A. Batalona's Application for Writ of Certiorari

### 1.   Colorable Claims for Relief

In his application, Batalona asserts twenty-two of the twenty-four grounds for relief that are raised in his petition.[23] Among those grounds is a claim that defense counsel provided ineffective assistance at trial for failing to challenge the circuit court's denial of Batalona's request for a copy of discovery materials.  Based on this failure, Batalona respectively contends in grounds 8 and 10 that his right to participate in his own defense was impaired and his right to voluntarily waive the right to testify was affected.

Batalona specifically asserts in ground 8 that defense counsel erred in asking the court's permission to release discovery materials to him when Rule 16(e)(3) of the Hawai'i

_____

[23]    Although the grounds are numbered differently in the petition and the application, they are identical in substance and will be referenced as numbered in the petition.

26

Rules of Penal Procedure (HRPP) places the burden on the State to show cause why Batalona should not be provided a copy of the discovery materials.

Batalona's counsel, on February 15, 2000, made a pretrial request to provide Batalona with a redacted copy of the discovery that had been disclosed by the prosecutor. The request was denied by the circuit court. At the time of Batalona's pretrial request, HRPP Rule 16(e)(3) provided as follows:

> Any material furnished to an attorney pursuant to these rules shall remain in the attorney's exclusive custody and be used only for the purposes of conducting the attorney's side of the case, and shall be subject to such other terms and conditions as the court may provide.

HRPP Rule 16(e)(3) (1993). Hence, HRPP Rule 16(e)(3) stated that discovery materials were to remain in an attorney's exclusive custody but that they "shall be subject to such other terms and conditions as the court may provide." Counsel informed the court that the discovery consisted of approximately 3,000 pages and that it was important for Batalona to receive the discovery because each witness was going to testify as to events that occurred on the day of the incident. Defense counsel also explained that it would probably take about one to two months to review the discovery with Batalona. In denying defense counsel's request, the court stated that, if Batalona's

27

request was granted, then every defendant will be asking for a copy of discovery and that counsel could instead go to the prison to discuss the discovery materials with Batalona.

Effective July 1, 2000, HRPP Rule 16(e)(3) was amended to read as follows:

> Except as otherwise provided in this subsection, any discovery material furnished to an attorney pursuant to these rules shall remain in the attorney's exclusive custody and be used only for the purposes of conducting the attorney's side of the case, and shall be subject to such other terms and conditions as the court may provide. The attorney may provide the defendant with a copy of any discovery material obtained if the attorney gives the prosecutor written notice of the attorney's intent to do so and the prosecutor does not file a motion for protective order within ten (10) days of the receipt of the notice.

HRPP Rule 16(e)(3) (2000) (emphasis added). Based on the rule amendment, an attorney was authorized without court permission to provide a defendant with a copy of discovery materials, so long as notice of the intent to do so was communicated to the prosecutor in writing and the prosecutor did not move for a protective order within ten days of receiving notice.[24]

---

[24] The dissent argues that ground 8 of Batalona's petition relates only to the pre-2000 version of HRPP Rule 16(e)(3). Dissent at 8. On the contrary, Batalona contends in ground 8 that HRPP Rule 16(e)(3) "places the burden on the prosecution to show cause why Batalona should not be provided with discovery." (Capitalization omitted.) And indisputably, it was the 2000 amendment to HRPP Rule 16(e)(3) that allowed a defense counsel to provide a copy of the discovery to the defendant, placing the burden on the prosecutor to move for a protective order upon receiving notice from a defense counsel that a copy of the discovery was to be provided to the defendant. Thus, Batalona's reliance on the 2000 amendment to HRPP Rule 16(e)(3) is markedly apparent.

Trial in this case did not commence until July 27, 2000. Following the amendment to HRPP Rule 16(e)(3) on July 1, 2000, defense counsel could have notified the prosecutor in writing that he was going to provide Batalona with a copy of the obtained discovery while also requesting the circuit court to modify its prior ruling in light of the amended rule. Notice to the prosecutor would have allowed the State ten days to file a motion for a protective order. If the prosecutor had objected, the circuit court would have decided, based upon a showing of cause, whether to deny, limit, or postpone Batalona's access to the discovery, or "make such other order as is appropriate." HRPP Rule 16(e)(4) (2000).[25] However, nothing in the record indicates that defense counsel gave the prosecutor written notice of an intent to provide Batalona with copies of the discovery, renewed Batalona's request for discovery after HRPP Rule 16(e)(3) was amended, or requested that the circuit court modify its previous ruling.

---

[25]    HRPP Rule 16(e)(4) provides in relevant part as follows:

> Upon a showing of cause, the court may at any time order that specified disclosures or investigatory procedures be denied, restricted, or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled shall be disclosed in time to permit counsel to make beneficial use thereof.

"The constitutional right to the assistance of counsel in a criminal case . . . is satisfied only when such assistance is 'effective.'" State v. Kahalewai, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972) (quoting Powell v. Alabama, 287 U.S. 45, 71 (1932)). This court has recognized that "effective" counsel means "counsel whose assistance is 'within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "A primary requirement is that counsel must conduct careful factual and legal investigations and inquiries with a view to developing matters of defense in order that he [or she] may make informed decisions on [the] client's behalf, . . . both at pretrial proceedings . . . and at trial." State v. Aplaca, 74 Haw. 54, 70, 837 P.2d 1298, 1307 (1992) (third and fourth alterations in original) (quoting Kahalewai, 54 Haw. at 30-31, 501 P.2d at 979-80). In a similar fashion, Standard 4-1.2(b) of the American Bar Association (ABA) Defense Function Standards for Criminal Justice (3d ed. 1993) [hereinafter ABA Defense Function Standards] provides that the basic duty of defense counsel is "to render effective, quality representation."

Additionally, to fulfill their duty as advocates, "lawyers must take pains to guarantee that . . . their knowledge

30

[is] up-to-date." ABA Defense Function Standards § 4-1.2 cmt. at 123. Defense counsel in this case thus had a duty in the course of representing Batalona to keep apprised of rules and amendments that were in place at the time of Batalona's trial and to act accordingly. See ABA Defense Function Standards § 4-1.2 cmt. at 123.

The record does not support a finding that defense counsel acted in response to the amendment to HRPP Rule 16(e)(3), which related critically to the ability of Batalona and counsel to prepare for trial upon a charge that carried a sentence of mandatory life imprisonment without parole upon conviction. Batalona contends that the denial of access to discovery violated his right to present a complete defense and also adversely impacted his waiver of the right to testify.[26]

---

[26] The dissent maintains that the 2000 amendment to HRPP Rule 16(e)(3) "permitted, but did not require, defense counsel to provide the defendant with copies of discovery materials." Dissent at 9 (emphases omitted). In this case, there were approximately 3,000 pages of discovery, which included reports and statements of witnesses adverse to Batalona who would testify at trial regarding the incident. Defense counsel underscored to the court the importance for Batalona to review these reports and statements "word by word" and contended that Batalona was entitled to review the discovery materials. The circuit court summarily rejected counsel's reasons, stating that "there's very few information that any defendant really needs to understand in terms of the details of a case." But it was Batalona's inability to review the discovery that he asserts later played a pivotal role in the trial. Batalona states in ground 10 of his petition that although he wanted to testify, defense counsel told him that his testimony would jeopardize defense counsel's trial strategy because "Batalona was prohibited from having any discovery." Thus, while HRPP Rule 16(e)(3) may

(continued . . .)

### i. Right to Present a Complete Defense

"Central to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense." State v. Tetu, 139 Hawai'i 207, 219, 386 P.3d 844, 856 (2016) (quoting State v. Kaulia, 128 Hawai'i 479, 487, 291 P.3d 377, 385 (2013)). This court has recognized "the well-established principle that 'all defendants must be provided with the basic tool[s] of an adequate defense.'" Id. (alteration in original) (quoting State v. Scott, 131 Hawai'i 333, 352, 319 P.3d 252, 271 (2013)).

Batalona contends in ground 8 that the discovery materials consisted of crucial evidence, including witness statements, indicating that he was not the shooter and that all four robbers carried rifles. Batalona states that because he was denied access to copies of discovery materials, he had no knowledge of the extent of the State's evidence against him. Without the discovery materials, Batalona asserts that he was unable to exercise his right to defend himself with the

---

(. . . continued)

not "require" a defense counsel to provide a copy of discovery to a defendant in every case, it was plainly imperative under the circumstances of this case for Batalona's counsel to have taken the necessary steps to provide the discovery to Batalona, particularly when Batalona was charged with an offense carrying a sentence of life imprisonment without parole.

effective assistance of counsel. Batalona submits that, had he been provided access to discovery, he could have used the knowledge gained to guide defense counsel toward viable defense options, including the presentation of factual evidence that would disprove that he was the shooter.

As counsel for Batalona failed to act in response to the amendment to HRPP Rule 16(e)(3), ground 8 presents a colorable claim of ineffective assistance of counsel "because if the facts therein were taken as true, they could change the verdict" given the crucial information described by Batalona to be in the discovery materials, of which he was not aware. See Wilton v. State, 116 Hawai'i 106, 122, 170 P.3d 357, 373 (2007) (citing Barnett v. State, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999)). Defense counsel's Declaration did not address Batalona's contentions in ground 8 except to state that any omission on his part "did not substantially impair a meritorious claim or defense, and/or resulted from a strategic or tactical decision." Therefore, the circuit court erred in denying without a hearing ground 8 of Batalona's petition.

### ii. Waiver of the Right to Testify

Batalona asserts in ground 10 that he wanted to testify but defense counsel repeatedly urged him not to do so.

33

According to Batalona, defense counsel told him that his testimony "would jeopardize [counsel's] trial strategy" because "Batalona was prohibited from having any discovery." Batalona contends that defense counsel told him "the state will cut you to pieces – just let me do my job." "But for counsel's repeated urging of Batalona not to testify," Batalona continues, he would not have waived his right to testify and his testimony could have established a defense that he was not the shooter.[27]

It is a fundamental constitutional guarantee that a defendant in a criminal trial has a right to testify and a right not to testify. State v. Monteil, 134 Hawai'i 361, 369, 341 P.3d 567, 575 (2014) (citing Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995)). Consistent with these rights, this court has recognized that a defendant's waiver of the right to testify must be voluntary, knowing, and intelligent. Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303 (citation omitted). The decision whether to relinquish the right to testify "must . . . not [be] the product of coercion or undue influence." State v.

---

[27] Batalona states that counsel never informed him about the "many" eyewitness accounts indicating that all four robbers had rifles. According to Batalona, he told counsel prior to trial that he modified an AR-15 rifle for Dailey in exchange for proceeds from the robbery and that the modified AR-15 rifle was used by Dailey at Waiahole Ranch and during the robbery.

Silva, 78 Hawai'i 115, 123, 890 P.2d 702, 710 (App. 1995)
(citation omitted), abrogated on other grounds by Tachibana, 79
Hawai'i 226, 900 P.2d 1293.

Batalona contends that defense counsel repeatedly
urged him not to testify because he had not been provided any of
the discovery materials and, as a result, counsel's trial
strategy would be jeopardized. If taken as true, the alleged
facts in ground 10 of the petition indicate that Batalona's
waiver of the right to testify may not have been voluntary.
Defense counsel's Declaration did not specifically address
Batalona's contentions in ground 10 except to say that the court
conducted a colloquy pursuant to Tachibana and that any
privileged communications between counsel and Batalona would not
be disclosed without an order from the court. Hence, ground 10
raises a colorable claim of ineffective assistance of counsel,
as Batalona's waiver of the right to testify may have been "the
product of coercion or undue influence" because he had not been
provided a copy of the discovery due to defense counsel's
failure to act in response to the amendment to HRPP Rule
16(e)(3). See Silva, 78 Hawai'i at 123, 890 P.2d at 710, see
Barnett v. State, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999)

(citing HRPP Rule 40(f)). Therefore, the circuit court erred in denying without a hearing ground 10 of Batalona's petition.

### 2. Batalona's Other Claims for Relief

In ground 19 of his petition, Batalona asserts that defense counsel provided ineffective assistance on appeal by failing to raise a claim that the circuit court erred in not instructing the jury on the included offense of assault against a police officer. Batalona contends that there was ample evidence at trial to permit a jury instruction on this offense.

At trial, Batalona orally requested that the circuit court instruct the jury on the offense of assault against a police officer.[28] The court denied the requested instruction on the basis that the offense was not supported by the evidence.

---

[28] The requested instruction read as follows:

> If and only if you find the defendant not guilty of Assault in the Second Degree, or are unable to reach a unanimous verdict as to this offense, then you must determine whether the defendant is guilty or not guilty of the included offense of Assault against a Police Officer.
> A person commits the offense of Assault against a Police Officer if he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause bodily injury to a police officer who is engaged in the performance of duty.
> There are 4 material elements of this offense each of which the prosecution must prove beyond a reasonable doubt.
> These 4 elements are:
> 1. That, on or about the 7th day of July, 1999, in the City and County of Honolulu, State of Hawaii, the Defendant intentionally engaged in conduct; and

(continued . . .)

36

HRS § 701-109(5) provides that the court is not obligated to instruct the jury on an included offense "unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."  HRS § 701-109(5) (1993).[29]  As applied in this case, the circuit court was required to consider whether there was a rational basis in the evidence that Batalona "[i]ntentionally, knowingly, or

_____

(. . . continued)

> 2. That the Defendant's conduct was a substantial step in a course of conduct intended or known by the Defendant to cause bodily injury to Frederick Rosskopf, a police officer; and
> 3. That the Defendant was aware, at the time, that Frederick Rosskopf was a police officer; and
> 4. That the Defendant acted intentionally or knowingly to cause bodily injury to Frederick Rosskopf because of the police officer's performance of official duties.

While Batalona orally requested an instruction for "assault against a police officer," the instruction included language both for the substantive offense and for the attempt offense.

[29]     Assault against a police officer is an included offense of attempted murder in the first degree pursuant to HRS § 701-109(4) (1993). Under HRS § 701-109(4), an offense is included in another when

> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
> (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

recklessly cause[d] bodily injury to [Officer Rosskopf] who [wa]s engaged in the performance of duty" and that the statutory requirements for attempted murder in the first degree were not met. HRS § 707-712.5(1)(a) (1993); HRS § 701-109(5).

Batalona argued that the evidence showed that the jury could reasonably find that he did not intend to shoot at Officer Rosskopf but that his firing in Officer Rosskopf's direction recklessly placed the officer at risk of bodily injury. The evidence adduced at trial showed that Officer Rosskopf had received abrasions as a result of the shooting that had occurred outside of the bank. In addition, Batalona was a range instructor who taught shooting and thus, Batalona argued, a jury could reasonably infer that he may have deliberatively shot in the direction of, but not directly at, the officer. Further, according to the State's witness, Talakai, Batalona informed him that he was just trying to get away. Thus, there was a rational basis in the evidence for a verdict acquitting Batalona of attempted murder in the first degree and convicting Batalona of assault against a police officer. See HRS § 701-109(5).

On direct appeal, defense counsel did not challenge the circuit court's refusal to instruct on the offense of assault against a police officer. To determine whether defense

counsel rendered ineffective assistance on appeal, a petitioner must show that counsel did not raise an "appealable issue," which is an error or omission by counsel that results in the withdrawal or substantial impairment of a potentially meritorious defense. Briones v. State, 74 Haw. 442, 465-66, 848 P.2d 966, 977 (1993). If an appealable issue is omitted, the question becomes whether, "in light of the entire record, the status of the law, and the space and time limitations inherent in the appellate process, a reasonably competent, informed and diligent criminal attorney would not have omitted that issue." Domingo v. State, 76 Hawai'i 237, 242, 873 P.2d 775, 780 (1994) (citing Briones, 74 Haw. at 466-67, 848 P.2d at 977-78).

In this case, there was a rational basis in the evidence for the circuit court to instruct the jury on the included offense of assault against a police officer. The failure by the court to submit this instruction to the jury was an "appealable issue" in Batalona's appeal. However, in 2001, while Batalona's case was on direct appeal, this court held that a trial court's error in failing to give an appropriate instruction on an included offense was harmless when the defendant was convicted of the greater offense. State v. Haanio, 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001), overruled

by State v. Flores, 131 Hawai'i 43, 314 P.3d 120 (2013).  The

decision in Haanio overruled State v. Kupau, 76 Hawai'i 387, 879

P.2d 492 (1994), as to the effect of a trial court's error in

not instructing on an included offense having a rational basis

in the evidence.  As applied to Batalona's case, Haanio would

thus hold that the circuit court's error in not instructing the

jury on assault against a police officer was harmless, given

that the jury convicted Batalona of attempted murder in the

first degree.[30]  Because Haanio was controlling law that was

recently established at the time of Batalona's direct appeal,

Batalona has not shown a colorable claim that defense counsel's

failure to challenge the circuit court's refusal to instruct on

assault against a police officer constituted ineffective

assistance of counsel.[31]  Accordingly, the circuit court did not

err in denying ground 19 without a hearing.

---

[30]     The record reveals that counsel for Batalona was aware of Haanio
at the time he filed the direct appeal, as he questioned the harmless error
holding of Haanio in challenging the circuit court's refusal to instruct on
two other offenses.

[31]     As set forth in the State's answering brief, "Haanio was in turn
overruled by State v. Flores, 131 Hawai'i 43, 314 P.3d 120 (2013)."  The
Flores decision was issued after Batalona filed his petition, and thus we do
not address this decision in our consideration of the petition.

40

The remaining grounds for relief that are asserted in the petition, which Batalona restates in his application, fall into five groups. First, in grounds 2, 4, and 20(c), Batalona raises claims of ineffective assistance of counsel on appeal.[32] Second, in grounds 3, 6, 9, 13, 14, 15, and supplemental grounds 23 and 24, Batalona raises claims of ineffective assistance of counsel at trial as it relates to his state and federal prosecution and the evidence at trial.[33] Third, Batalona challenges in grounds 5, 16, 17, and 21 counsel's failure to

---

[32] Ground 2 challenges the circuit court's purported delay in responding to a jury communication; however, the record lacks any showing of prejudice. Ground 4 maintains that Batalona could not have been convicted of count 17 because it is an included offense of counts 1 and 3; however, this assertion is incorrect, see HRS § 701-109(4). Ground 20(c) submits that counsel wasted space on a frivolous issue in the opening brief on appeal, but Batalona does not indicate in this ground specific issues that should have been argued instead.

[33] Batalona's allegation in ground 3 of improper dismissal of federal charges is not properly before this court, and his prosecution in federal and state court is not barred by HRS § 701-112 (1993). Ground 6 incorrectly contends that count 3 improperly joined two offenses in a single count. Grounds 9 and 13 maintain that counsel failed to argue selective prosecution; however, these grounds fail to assert a factual basis for a showing of selective prosecution, see State v. Kailua Auto Wreckers, Inc., 62 Haw. 222, 225-27, 615 P.2d 730, 734-35 (1980). Ground 14 contends, without requisite factual allegations, that counsel failed to challenge the State's use of Dailey's testimony, which counsel purportedly knew to contain false statements. Ground 15 also fails to present factual allegations in support of Batalona's contention regarding counsel's failure to move to suppress the AR-15 rifle magazine recovered from the bake shop van. Supplemental grounds 23 and 24 relate to the calling of witnesses and the presentation of evidence at trial, but the grounds do not identify who counsel should have called and how such witnesses' testimonies would have helped the defense.

41

contest the adequacy of several jury instructions.[34] Fourth, in grounds 20(a), 20(b), 20(d), 20(e), and 20(g), Batalona claims that counsel failed to raise matters that were of "critical importance" to his defense.[35] And fifth, in grounds 7, 18, and 22, Batalona challenges matters relating to post-conviction, his sentence of life imprisonment without parole, and a potential retrial.[36] Inasmuch as the aforementioned grounds do not raise a

---

[34] Ground 5 contends that the circuit court failed to instruct the jury that Batalona cannot be convicted of both count 1 and count 2; however, Batalona was charged with count 1 under HRS § 708-840(1)(b)(ii), not HRS § 708-840(1)(b)(i). See State v. Ah Choy, 70 Haw. 618, 622, 780 P.2d 1097, 1100-01 (1989). Grounds 16, 17, and 21 challenge the jury instructions on attempted murder in the first degree, proof beyond a reasonable doubt, and criminal attempt; however, when read and considered as a whole, the instructions were not prejudicially erroneous or insufficient.

[35] Ground 20(a) incorrectly contends that the AK-47 rifle should not have been taken inside the jury room during deliberations. See State v. Robinson, 79 Hawaiʻi 468, 473, 903 P.2d 1289, 1294 (1995). Ground 20(b) lacks factual support for its assertion that the State did not have a good faith basis for its PowerPoint presentation. Ground 20(d) asserts error in counsel's failure to call a ballistics expert without identifying who counsel should have called and how that expert's testimony would have been favorable to Batalona's defense. Ground 20(e) pertains to the sufficiency of the evidence on the attempted first-degree murder conviction, upon which this court has previously ruled. See State v. Batalona, No. 23820, 2003 WL 22311769, at *2 (Haw. Oct. 9, 2003) (SDO). Ground 20(g) erroneously maintains that counsel failed to challenge the State's ballistics evidence.

[36] Ground 7 relates to Batalona's inability to timely file a federal habeas corpus petition, which is not properly before this court. Ground 18 maintains that Batalona's sentence of life imprisonment without parole is unlawful because the commutation provision is injudiciously applied and the sentence is cruel and unusual. We do not address ground 18 at this time in light of the remand for a hearing; therefore, ground 18 is dismissed without prejudice. Finally, ground 22 incorrectly asserts that cumulative errors and omissions would preclude instructions on lesser included offenses in a retrial.

colorable claim for relief, the circuit court did not err in denying a hearing on these grounds.

## B. State's Application for Writ of Certiorari

In its application, the State contends that the ICA erred in holding that the circuit court should have held a hearing on ground 20(f) of Batalona's petition on the basis that there was a colorable claim that defense counsel was ineffective for not attempting to secure the attendance of Hayme at trial. At trial, the circuit court admitted as evidence the redacted statement of Hayme, a co-participant in the robbery who was not present to testify. Hayme's statement had the extremely prejudicial effect of implicating Batalona in the offense of attempted murder in the first degree while exculpating himself as to involvement in that offense. See infra.

Under the Hawaii Rules of Evidence, hearsay is generally inadmissible at trial unless it qualifies as an exception to the hearsay rule.[37] Hawaii Rules of Evidence (HRE) Rule 802 (1993). Hayme's redacted statement was admitted as a

-----

[37] Pursuant to Rule 802 (1993) of the Hawaii Rules of Evidence (HRE), "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute." As defined, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801 (1993).

statement against interest.  An out-of-court statement may potentially be admitted as a statement against interest under HRE Rule 804(b)(3) (1993) if the declarant is unavailable as a witness.  "Unavailability as a witness" includes, in relevant part, situations in which the declarant "[i]s exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." HRE Rule 804(a)(1) (1993).

To demonstrate a declarant's unavailability, a showing must be made that good faith efforts were expended to locate and produce the declarant.  State v. Moore, 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996) (citing State v. Ortiz, 74 Haw. 343, 363, 845 P.2d 547, 556-57 (1993)).  In establishing good faith efforts, the party "must confirm on the record at the time of trial both the declarant's unavailability and that vigorous and appropriate steps were taken to procure the declarant's presence at trial."[38]  Id. (quoting Ortiz, 74 Haw. at 363, 845 P.2d at 556-57).

---

[38]     While the caselaw in this jurisdiction has focused on the prosecution as the party having the burden to locate and produce a declarant, under the circumstances of this case, counsel's duty to provide effective representation included, as the ICA held, efforts to secure Hayme's presence at trial to allow Batalona to cross-examine him regarding his account of the

(continued . . .)

The admission of Hayme's recorded statement was the subject of some discussion at a hearing on the State's first motion in limine.  At that hearing, counsel for Batalona informed the court that the defense wanted to call Hayme as a witness to determine whether he would invoke his privilege against self-incrimination.  Counsel's duty to render effective representation in this case included attempting to secure Hayme's attendance at trial so as to prevent the admission of Hayme's statement without the opportunity to cross-examine him.  The record indicates that counsel was aware that the court had determined in the pretrial hearing to admit Hayme's statement, as counsel responded at trial that there was no objection to the statement's introduction into evidence except for what had been discussed previously.  However, there is no indication that defense counsel took any steps to procure Hayme's attendance at trial, whether by process or by other reasonable means.  Nor did counsel establish on the record that he made a good faith attempt to secure the presence of Hayme at trial.  Counsel's

_____

(. . . continued)

incident.  Because Hayme did not appear, his recorded statement was admitted at trial.

45

Declaration did not explain why he took no steps to obtain Hayme's presence at trial.

The State argues that Hayme was unavailable to testify at trial because he had personally invoked his privilege against self-incrimination at the hearing that was held on July 31, 2000 and that the circuit court indicated as much at that hearing. However, the transcript of the July 31, 2000 hearing is not part of the record on appeal. Therefore, it is unclear whether Hayme was unavailable to testify at trial, as the ICA observed.

Even assuming that Hayme invoked his privilege against self-incrimination at the hearing and the court declared him unavailable to testify, it was imperative for defense counsel to undertake all feasible measures to secure Hayme's live testimony two days later at trial in order to cross-examine him. Hayme as part of his plea agreement with the federal government had agreed to testify truthfully at any hearing or trial if called to do so. Additionally, Batalona contends that Hayme was in federal custody during the course of his trial. There is no indication in the record, however, that defense counsel exercised a good faith attempt to subpoena or otherwise procure Hayme's attendance at trial. Engaging in such effort was critical to Batalona's defense, given that Hayme's absence at

46

trial allowed for the admission of Hayme's recorded statement, which was immensely prejudicial to Batalona. See infra. Defense counsel should not have assumed that because Hayme had invoked his privilege against self-incrimination two days prior to the admission of his statement, he would again invoke the privilege if called to testify. This assumption is even more problematic in light of Hayme's plea agreement that required him to testify at any hearing or trial if called to do so and his express agreement not to assert any privilege to refuse to testify in a state trial involving a co-participant.

The State cites to State v. McGriff, 76 Hawai'i 148, 871 P.2d 782 (1994), in support of its argument that Hayme was unavailable to testify, maintaining that, like the co-defendant in McGriff, Hayme invoked his Fifth Amendment privilege against self-incrimination. However, in McGriff, the State served a trial subpoena on the co-defendant, which the co-defendant's attorney moved to quash. 76 Hawai'i at 153, 871 P.2d at 787. The court denied the motion to quash, and the co-defendant appeared at trial. Id. Upon being called as the State's next witness, the co-defendant took the stand and thereafter invoked his Fifth Amendment privilege. Id. Unlike the co-defendant in McGriff, Hayme was not served with a subpoena requiring his

47

attendance at trial, and Hayme did not appear at trial to invoke his Fifth Amendment privilege.

A failure to subpoena Hayme may have substantially impaired a potentially meritorious defense in this case. The State conceded and the evidence showed that Hayme fired his weapon during the robbery, and as the ICA concluded, if Hayme had testified, Batalona may have cast reasonable doubt on the State's theory that it was Batalona who shot at Officer Rosskopf. Accordingly, Batalona's contention in ground 20(f) of his petition that defense counsel was ineffective for failing to secure Hayme's attendance at trial raises a colorable claim for relief.

In addition to the unavailability prong that must be satisfied before Hayme's statement could have been admitted at trial, the statement must qualify as a "statement against interest." A statement against interest is one

> which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

HRE Rule 804(b)(3) (emphases added). In Williamson v. United States, the United States Supreme Court held that the statement against interest exception to the hearsay rule "does not allow

48

admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." 512 U.S. 594, 600-01 (1994). Thus, each statement within the broader narrative must be carefully examined to determine if it is against the declarant's interest. Id. at 600-04. If an individual declaration is not a statement against the declarant's interest, then that particular declaration is not admissible. Id.

As noted, the record does not contain Hayme's redacted statement that was admitted at trial. However, the parties' closing arguments indicate that portions of Hayme's statement were not truly inculpatory.[39] For example, Hayme's statement recounted that he did not shoot at Officer Rosskopf. Hayme also said in his statement that the person who was shooting at Officer Rosskopf was mounted on top of the Blazer. These declarations implicated Batalona given Dailey's testimony that Batalona stood "in the door jamb on the passenger side of the Blazer," that Batalona's weapon was pointed in the direction of Officer Rosskopf's car, and that Hayme and Matsunaga were the last to exit the bank. Additionally, Hayme stated that he did

---

[39] We do not address the circumstances under which the recorded statement was elicited with respect to its inculpatory nature.

not fire his weapon until after shots were fired. Hayme also stated that he fired maybe two rounds "just in the air," which would have excluded him as the person shooting at Officer Rosskopf. Unquestionably, each of these statements within Hayme's narrative did not implicate Hayme as the person who fired multiple rounds at Officer Rosskopf. Rather, many of Hayme's statements in his broader account--whether standing alone or in conjunction with other evidence introduced by the State--directly implicated Batalona and were "non-self-inculpatory statements." Williamson, 512 U.S. at 600-01. Therefore, the admission of Hayme's statement as a statement against interest under HRE Rule 804(b)(3) raises a colorable claim for relief.[40]

The receiving into evidence of Hayme's recorded statement may also have violated the federal and state constitutions. Batalona contends in ground 20(f) that he had state and federal rights to confront Hayme at trial and that

_____

[40] HRE Rule 804(b)(3) is identical with Federal Rules of Evidence (FRE) Rule 804(b)(3). The Advisory Committee Notes of FRE Rule 804(b)(3) warn that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Hayme's recorded statement was provided to investigators in the presence of the Assistant United States Attorney who was prosecuting him in federal court. The statement was provided the day after Hayme reached a plea agreement with the United States Attorney's Office.

confrontation of Hayme would have allowed the jury to assess Hayme's truthfulness.  This court has recognized that the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution "guarantee criminal defendants the right to confront and cross-examine adverse witnesses."  State v. Haili, 103 Hawai'i 89, 103, 79 P.3d 1263, 1277 (2003) (citing Moore, 82 Hawai'i at 222, 921 P.2d at 142). "The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses."  State v. Sua, 92 Hawai'i 61, 70, 987 P.2d 959, 968 (1999) (quoting Ortiz, 74 Haw. at 360, 845 P.2d at 555).  Thus, the right to cross-examine one's accuser is chief among the interests secured by the confrontation clause. McGriff, 76 Hawai'i at 155, 871 P.2d at 789 (citing Ohio v. Roberts, 448 U.S. 56, 63 (1980)).

For testimonial hearsay to be admissible, the confrontation clause demands a showing that the declarant is

unavailable.[41]  State v. Fields, 115 Hawai'i 503, 513, 168 P.3d 955, 965 (2007) (citing Crawford v. Washington, 541 U.S. 36, 59 (2004)).  The discussion set forth supra regarding unavailability is fully pertinent here.  To reiterate, the record fails to establish that defense counsel made a good faith attempt to obtain Hayme's attendance at trial.  Nor did defense counsel confirm on the record at trial that Hayme was unavailable or that vigorous steps had been taken to procure his attendance at trial.  And, as the ICA found, the record also does not indicate that the State made a good faith attempt to secure Hayme's attendance at trial.

The confrontation clause restricts the admission of testimonial hearsay in a second way.  At the time of Batalona's trial, the standard pursuant to Roberts, 448 U.S. 56, was as follows: "[u]pon demonstrating that a witness is unavailable," the party must show that the statement to be admitted "bear[s] adequate indicia of reliability."  Sua, 92 Hawai'i at 71, 987 P.2d at 969.  Reliability may be inferred if the statement falls within a firmly rooted exception to the hearsay rule, or it "may

---

[41]     Statements provided as a result of police interrogations are testimonial under the Sixth Amendment.  Crawford v. Washington, 541 U.S. 36, 68 (2004).

52

be demonstrated 'upon a showing of particularized guarantees of trustworthiness.'" Id. (quoting Ortiz, 74 Haw. at 361, 845 P.2d at 556). In 2004, the United States Supreme Court held in Crawford that for testimonial hearsay to be admissible the confrontation clause demands a showing of unavailability and a prior opportunity for cross-examination. 541 U.S. at 68. Thus, under the second part of the confrontation analysis, instead of determining whether an unavailable declarant's statement bears "adequate indicia of reliability," the analysis is whether the defendant had a meaningful opportunity to cross-examine the declarant about the statement.[42] See id.

If the Roberts test is applied to Batalona's case, the circumstances under which Hayme's statement was made and the non-self-inculpatory statements within its general narrative may raise a question as to the reliability of Hayme's statement. If the Crawford test is applicable, the record does not indicate that Batalona had a prior opportunity to cross-examine Hayme about his statement. Thus, under either test, Batalona has raised a colorable claim for relief.

---

[42] This court has not addressed the applicability of the Crawford rule to cases in which the underlying conviction was already final at the time the Crawford decision was rendered.

53

In sum, the record does not indicate that defense counsel exercised a good faith attempt to procure Hayme's attendance at trial, which was critical to Batalona's defense. If counsel failed to do so, such failure may have resulted in the substantial impairment of a potentially meritorious defense because, if Hayme had testified, Batalona may have cast reasonable doubt on the State's theory that Batalona was the person who fired multiple rounds at Officer Rosskopf. In addition, as a result of Hayme's absence at trial, his recorded statement--although only partly self-inculpatory and at the same time extremely prejudicial to Batalona--was admitted as a "statement against interest," and it may also have been admitted in violation of Batalona's right to confrontation. Counsel's Declaration did not adequately respond to Batalona's claims regarding the failure to obtain Hayme's presence at trial. Therefore, the ICA correctly concluded that the portion of ground 20(f) of Batalona's petition regarding Hayme's statement raises a colorable claim for relief that warrants a hearing before the circuit court.

## V. CONCLUSION

Accordingly, we affirm the ICA's Judgment on Appeal insofar as it held that grounds 1 and 20(f) of Batalona's

petition raise colorable claims for relief.  We vacate the ICA's Judgment on Appeal in its affirmance of the circuit court's Order denying the petition with regard to the following grounds: as to grounds 8 and 10, Batalona has raised colorable claims for relief such that he is entitled to a hearing, and as to ground 18 it is dismissed without prejudice.  We otherwise affirm the ICA Judgment on Appeal to the extent that it denied a hearing on the remaining grounds in the petition.  This case is remanded to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Albert Batalona<br>pro se | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Brandon H. Ito<br>for respondent | /s/ Michael D. Wilson |

